**Karl EASTON, M.D., Plaintiff–Appellant,**

v.

**Clarence J. SUNDRAM; Paul Stavis; Walter E. Saurack; John J. Rybaltowski; Bruce E. Feig; Francine Cournos; Paul Glickman; Louis J. Patack; Kathleen Sweeney and Ilene Margolin, Defendants–Appellees.**

No. 1581, Docket 91–7165.

United States Court of Appeals,
Second Circuit.

Argued May 30, 1991.

Decided Oct. 18, 1991.

Leon Friedman, New York City, for plaintiff-appellant.

Laurel W. Eisner, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of State of N.Y., of counsel), for defendants-appellees.

Before OAKES, Chief Judge, KAUFMAN and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Dr. Karl Easton appeals from a judgment entered on July 18, 1990 pursuant to an opinion and order of the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*) granting defendants' motion to dismiss the complaint for failure of pleading under Fed.R.Civ.P. 12(b)(6). Easton, now represented by counsel, contends that the district court overlooked three well-pleaded constitutional claims under 42 U.S.C. § 1983 in his *pro se* complaint: claims for first amendment retaliation, malicious prosecution, and a violation of a protected liberty right. He further contends that the district court erred in holding that certain of the defendants were entitled to prosecutorial and witness immunity. We find that Easton's complaint failed to state a claim on the first amendment retaliation and malicious prosecution causes of action and that defendants were entitled to qualified immunity on the violation of liberty cause of action, regardless of whether or not Easton stated a claim. We therefore affirm without reaching the issues of prosecutorial or witness immunity.

## BACKGROUND

For the purposes of review of a Rule 12(b)(6) dismissal, we take the factual allegations of plaintiff's complaint as true. Easton, a psychiatrist, was the former executive director and ex-officio board member of the Brooklyn Psychosocial Rehabilitation Institute ("BPRI"), a not-for-profit mental health institution. His claims arise from a series of events that started with the suicide of a patient in July of 1984. The New York State Office of Mental Health ("OMH") subsequently initiated an inspection and ongoing investigation of Easton's facilities.

On August 24, 1984, OMH Regional Director Sarah Connell wrote a letter to BPRI's executive director, Irving Link, detailing a list of alleged shortcomings that had been uncovered in various inspections. These allegations included: lack of proper record-keeping and documentation of patient progress, failure to provide for regular medical and dental care, failure to properly report suicides, failure to document the implementation of a suicide prevention program, the presence of a serious roach infestation in patients' bedrooms, the possession by patients of outdated medications, improperly executed patient fee agreements, inadequate inventories of patients' possessions, and overcrowding.

On December 24, 1984, the New York City regional director of OMH suspended patient referrals to Boerum Hill, BPRI's residential and rehabilitative care facility in Brooklyn. In response, on February 5, 1985, BPRI filed a petition against OMH under Article 78 of the New York State Civil Practice Law and Rules (CPLR) in state court, alleging that its due process rights were being violated since no hearing had been held before OMH blocked referrals. The Article 78 suit was concluded on April 17, 1985, with OMH ordered to afford a hearing within 30 days. The hearing was never held, but on May 30, 1985, the regional office of OMH rescinded its memorandum to stop referrals to BPRI. The investigation by OMH continued, with health and fiscal standards targeted for scrutiny.

At about the same time that BPRI brought its Article 78 suit against OMH, another state agency, the Commission on Quality of Care ("CQC"), started an investigation of BPRI at the request of Kathleen Sweeney, a supervisor in the OMH regional office. In October of 1986, CQC issued a report recommending the continuation "under new auspices" of BPRI programs, recovery of cash and other assets "unlawfully received" by Easton's family or closely held corporations, and criminal prosecution of those who had "engaged in systematic fraud against the State and Federal governments."

The New York State Attorney General, the OMH and the State Department of Social Services ("DSS") brought suit against BPRI, Easton and others under the caption *People of the State of New York, New York State Office of Mental Health, New York State Department of Social Services v. Brooklyn Psychosocial Rehabilitation Institute, 3 Lafayette Avenue Corporation, Cobble Hill Center Corporation, Dr. Karl Easton, Jacqualine Easton, Irving Link, Theodore Rosten,* Sup.Ct. Kings County, Index No. 29163/86 (*"People v. BPRI"*). In *People v. BPRI,* the state charged the defendants with Medicaid fraud, endangering the health and safety of mentally disabled clients, and siphoning public funds through BPRI to members of Easton's family by way of improper leases with real estate corporations owned by Easton's children. At the same time, in an *ex parte* proceeding brought by the Attorney General pursuant to Article 31, Section 28 of the New York State Mental Health Law ("MHL"), the Supreme Court of the State of New York appointed Federation Employment Guidance Service ("FEGS"), a not-for-profit social welfare agency, as temporary receiver of the BPRI facilities pending determination of the State's charges. The receiver removed Easton from his post at BPRI. The complaint alleges that this firing took place in conjunction with the dissemination of highly defamatory charges against Easton. The court continued the receivership after a hearing, and it remained in effect for eighteen months, until

April of 1988. When the receivership terminated, OMH acquired the properties under the New York State Eminent Domain Procedure Law.

The State Supreme Court referred *People v. BPRI* to Judicial Hearing Officer ("JHO") Carmine A. Ventiera for determination of all issues. On November 7, 1990, the JHO denied the State relief on all causes of action. Easton alleges that the investigation and all of the charges that stemmed from it were fraudulently concocted and presented in bad faith.

On March 17, 1989, before the JHO had issued any decision, Easton and three corporate plaintiffs commenced this action *pro se* in the Southern District of New York, naming seven defendants: Clarence Sundram, Chairman and Commissioner of the CQC; Paul Stavis, Counsel to CQC; Walter E. Saurack, Chief of the Fiscal Bureau of CQC; John J. Rybaltowski, Program Cost Analyst of CQC; Bruce E. Feig, Executive Deputy Commissioner of OMH; Francine Cournos, M.D., Psychiatric Consultant, OMH; and Paul Glickman, former Assistant Attorney General of the State of New York. On May 3, 1989, the corporate plaintiffs were ordered dismissed for lack of counsel. On September 7, 1989, Easton filed an amended complaint naming three additional defendants: Louis J. Patack, Assistant Counsel, OMH; Kathleen Sweeney, Standards Compliance Analyst, OMH; and Ilene Margolin, former Special Assistant to the Governor of the State of New York. On November 20, 1989, Easton filed a second amended complaint, seeking $40 million in compensatory and exemplary damages.

The second amended complaint charged the defendants in their individual and official capacities with violating the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. §§ 1981, 1983, 1985, and 1988, and 18 U.S.C. §§ 1962(c) and (d). The complaint set forth eight causes of action, including violation of Easton's civil rights; negligence, gross negligence, recklessness and misrepresentation; defamation, deceit and intentional infliction of emotional distress; abuse of process and malicious prosecution; wrongful receivership and wrongful condemnation; wrongful dismissal; racketeering and conspiracy to defraud under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). It charged that the individual defendants secretly conspired to deprive him of his constitutionally protected rights in investigating and prosecuting the State's claims in *People v. BPRI*.

The defendants moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56(b). On July 18, 1990, the district court granted the motion to dismiss, holding that all defendants were immune from suit in their official capacities under the Eleventh Amendment, and that Easton had failed to plead cognizable federal claims against the defendants in their individual capacities. It also held that Glickman was entitled to absolute prosecutorial immunity and that Sweeney, Cournos and Patack were entitled to witness immunity. The court dismissed Easton's conspiracy claims for failure to state a claim, his RICO claim for failure to allege the necessary predicate offenses and the Section 1983 claim for failure to allege the deprivation of a protected property or liberty interest. Finally, the district court declined to retain jurisdiction over common law tort claims. On December 18, 1990, it granted plaintiff's motion for reconsideration and reaffirmed the dismissal of the complaint. It denied plaintiff's second motion for reargument on January 14, 1991. Appeal to this court followed.

## DISCUSSION

Easton argues that the district court overlooked three well-pleaded constitutional claims in his complaint: claims for first amendment retaliation, malicious prosecution, and a violation of a protected liberty right.

In reviewing Easton's appeal from the dismissal of his *pro se* complaint, we must bear in mind that in ruling on a 12(b)(6) motion, a court is required to accept the material facts alleged in the com-

plaint as true, *see, e.g., Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam), and not to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991). This caution against dismissal applies with even greater force where the complaint is *pro se, see, e.g., id.; Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), or where the plaintiff complains of a civil rights violation, *see, e.g., Branum,* 927 F.2d at 705.

## I. *First Amendment Retaliation*

■ Easton's complaint alleges that the defendants waged a bad faith campaign against him, motivated, at least in part, out of a desire to retaliate for his decision to bring the Article 78 proceeding in state court against OMH on behalf of BPRI. Easton's complaint states *inter alia:* "After losing a law suit, [the defendants] implemented a plan to remove and punish the plaintiff...." He asserts that the right to redress grievances is protected by the first amendment, and that he has alleged a well-pleaded complaint for first amendment retaliation under 42 U.S.C. § 1983.

"To recover on a first amendment claim under § 1983, a plaintiff must demonstrate that his conduct is deserving of first amendment protection and that the defendants' conduct of harassment was motivated by or substantially caused by his exercise of free speech." *Rattner v. Netburn,* 930 F.2d 204, 208 (2d Cir.1991) (quoting *Donahue v. Windsor Locks Bd. of Fire Com'rs,* 834 F.2d 54, 58 (2d Cir.1987)); *see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

Easton's complaint fails to meet the first requirement of this test because he has failed to demonstrate that his conduct is deserving of first amendment protection. Although we accept his argument that the institution of an Article 78 lawsuit may constitute first amendment protected activi-

ty, *see, e.g., Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 2169, 76 L.Ed.2d 277 (1983) ("the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"); *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988) (first and fourteenth Amendments guarantee right to petition government for broad redress of grievances), it was *BPRI,* not *Easton,* that brought the Article 78 proceeding. Therefore, accepting as true Easton's allegations that defendants sought to retaliate because OMH was unsuccessful in the Article 78 proceeding, BPRI's first amendment rights were implicated, not Easton's. *Cf. First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 784, 98 S.Ct. 1407, 1420, 55 L.Ed.2d 707 (1978) (corporation may assert its own first amendment rights). Easton's claim thus fails at the outset because he himself has not engaged in conduct deserving of first amendment protection, and therefore any alleged retaliation against him could not have been in violation of his first amendment rights.

## II. *Deprivation of Liberty*

■ Easton contends that his complaint stated a claim for deprivation of a constitutionally protected liberty interest when he alleged that he was fired from his job and defamed in a way that will interfere with future job possibilities. We need not decide the issue of whether or not Easton adequately alleged deprivation of a liberty interest, however, because we hold that in any event, the defendants were entitled to qualified immunity on this claim since none of our decisions had clearly established at the time of the alleged conduct that the defendants' actions constituted a deprivation of a protected liberty interest.

In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court established that government officials are immune from liability for alleged constitutional violations if the claims do not allege violations of law which were "clearly established at the time an action occurred." The qualified immunity doctrine therefore protects a govern-

ment official performing discretionary functions from liability to the extent that his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (citations omitted). Typically when the district court has not decided a qualified immunity question, our practice is to remand. However, where the determination may be made on the purely legal basis that a law was not "clearly established at the time an action occurred," as here, we believe that resort to the district court is unnecessary. *See Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987) (qualified immunity can be either a pure question of law, as where rights have not yet been declared, or question of fact requiring resolution of objective reasonableness of state actor).

In reviewing our decisions, we find that the law of this Circuit has not clearly established that the conduct Easton complains of rises to the level of a constitutional violation, rather than simply a state tort. In *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), the Supreme Court held that "reputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' [n]or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Accord Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1990). Our cases have interpreted *Paul* to mean that some "stigma plus" is required to establish a constitutional deprivation. *Neu v. Corcoran,* 869 F.2d 662 (2d Cir.), *cert. denied,* 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989). In *Neu,* we held that our cases have not "clearly established that defamation occurring other than in the course of dismissal from a government job or termination of some other legal right o[r] status will suffice to constitute a deprivation of a liberty interest." *Id.* at 667.

Easton asserts that this case is analogous to our holding in *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir.1980). In *Quinn,* the plaintiff was an official of a not-for-profit corporation created to carry out urban redevelopment in Syracuse. He alleged that the Mayor of Syracuse defamed him and mounted a campaign to have him fired. We held that Quinn's allegations were sufficient to survive summary judgment, noting it was clear that the defamation occurred in the course of the termination of employment. However, re-examining *Quinn* in *Neu v. Corcoran,* 869 F.2d at 668–69, we reasoned that Quinn's job may have been "at least quasi-governmental, since his original appointment had come at the behest of the Mayor.... and the employing corporation had received the vast majority of its funding from the ... government...." We therefore concluded that *Quinn* did not "squarely establish[ ] that governmental defamation, outside the context of discharge from governmental employment or similar termination of a legal right or status, can constitute a deprivation of a liberty interest." *Id.* at 669. Thus, since Easton has failed to allege that he was defamed in the course of being fired from governmental employment or coupled with the termination of a legal right or status, we do not find *Quinn* to be of any assistance to him.

*Neu* also foreclosed Easton's argument based on *Rudow v. City of New York,* 822 F.2d 324 (2d Cir.1987), that a loss of private employment coupled with a foreclosure of other employment opportunities is sufficient to state a constitutional claim. Indeed, in *Neu* we stated that although *Rudow* "arguably suggests that the plaintiff would have a sufficient claim if he had alleged that the stigma foreclosed him from practicing his profession, even though the defamation was not connected to any loss of government employment or legal status, ... we decline to read ... *Rudow* that broadly." *Neu* at 668.

■ We further reject Easton's strained argument that because he was ultimately dismissed from his job at BPRI by a state court-appointed receiver, he was discharged by a state actor and therefore has suffered a loss cognizable under our holding in *Neu.* Even if we were to accept his argument that the receiver who fired him was a state actor for purposes of § 1983,

that does not mean that Easton was "discharge[d] from *governmental* employment," *Id.* at 669 (emphasis added), only that a state actor terminated his *private* employment. Nor does Easton point to any other "legal right or status" that he was deprived of by virtue of the alleged firing and dissemination of defamatory statements. We therefore affirm the district court's dismissal of Easton's claim on the alternate ground that even if Easton had stated a claim for deprivation of a constitutionally protected liberty interest, a question we do not decide, the defendants were nonetheless entitled to qualified immunity because it was not clearly established that the defamation Easton alleges constituted a deprivation of a constitutionally protected liberty interest.

### III. *Malicious Prosecution*

 Easton's final contention is that he stated a constitutional claim for malicious prosecution. The district court initially rejected this claim because at the time it rendered its decision, the state court proceedings had not yet terminated in Easton's favor. When those proceedings did terminate, Easton sent a letter to the district court. Interpreting the letter as a motion for reargument, the district court denied the motion on the merits.

Although we have repeatedly held that to state a claim for malicious prosecution under § 1983, a federal plaintiff must prove the elements of malicious prosecution under state law, *see, e.g., Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34, 39 (2d Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986), we have never determined whether a state law tort for civil as opposed to criminal malicious prosecution gives rise to a cause of action under § 1983. All of our previous cases that have reached the question have examined claims of malicious prosecution premised on underlying criminal proceedings. *See, e.g., Posr v. Doherty,* 944 F.2d 91 (2d Cir. 1991); *Day v. Morgenthau,* 909 F.2d 75 (2d Cir.1990); *Conway v. Village of Mount Kisco, N.Y.,* 750 F.2d 205 (2d Cir.1984),

*reaff'd,* 758 F.2d 46 (2d Cir.1985), *cert. granted sub nom. Cerbone v. Conway,* 474 U.S. 1100, 106 S.Ct. 878, 88 L.Ed.2d 915, *cert. dismissed,* 479 U.S. 84, 107 S.Ct. 390, 93 L.Ed.2d 325 (1986). To our knowledge, no other court to have considered the question has held that a cause of action pursuant to § 1983 for malicious civil prosecution exists. *See McMaster v. Cabinet for Human Resources,* 824 F.2d 518, 522 (6th Cir.1987) (those "courts that have recognized that malicious prosecution may support a section 1983 claim are virtually unanimous in holding that constitutional protection exists only with respect to criminal proceedings and not to civil proceedings") (citations omitted); M. Schwartz & J. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees (2d Ed.1991) § 3.10, at 169 & n. 366 (those few courts to have considered the question have concluded that malicious civil prosecution does not give rise to cause of action under § 1983) (citing cases); *Cloutier v. Epping,* 714 F.2d 1184 (1st Cir.1983) (in civil context, malicious prosecution standing alone does not implicate federally protected rights).

Simply because New York state affords a tort of civil malicious prosecution does not transform Easton's claim into a constitutional cause of action. Although we have previously held that the state tort of malicious criminal prosecution gives rise to a cause of action under § 1983, we note that criminal malicious prosecution typically implicates constitutional rights secured by the fourteenth amendment, such as deprivation of liberty, that are not automatically implicated in a malicious civil suit. This case, therefore, requires us to examine more closely the constitutional underpinnings of a § 1983 claim for malicious prosecution, bearing in mind that court must not "'make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981) (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)).

The fourteenth amendment protects those specific rights, guaranteed by the Bill

of Rights, which are required for ordered liberty, *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), and guards more generally against official conduct which "shocks the conscience" *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) or is " 'used for purposes of oppression.' " *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 277, 15 L.Ed. 372 (1856)); *see McClary v. O'Hare,* 786 F.2d 83, 88–89 (2d Cir.1986).[1] As the First Circuit recently explained in a malicious prosecution case, where a "plaintiff has not been physically abused, detained, prosecuted due to racial or political motivation or otherwise deprived of equal protection of the law, courts are reluctant to find 'conscience-shocking' conduct that would implicate a constitutional violation." *Torres v. Superintendent of Police of Puerto Rico,* 893 F.2d 404, 410 (1st Cir. 1990) (citing cases). A civil regulatory action, even if broad-based and aggressive, does not involve the deprivation of personal liberty or invasion of privacy that attends a criminal prosecution. *See Jones v. Chicago,* 856 F.2d 985, 992 (7th Cir.1988) (questioning whether criminal malicious prosecution can ever count as a deprivation of liberty where defendant is not imprisoned). Furthermore, Easton has not alleged that he was subjected to "conscience-shocking" behavior that would transform his state cause of action into a constitutional one. We do not hold that civil malicious prosecution can never give rise to a cause of action under § 1983, although we suspect it normally will not. Our focus is on the circumstances of this case, where we do not find that Easton was subjected to a misuse of the legal process so egregious as to work a deprivation of a constitutional dimension. Accordingly, we decline Easton's invitation to extend § 1983 to his allegations of malicious civil prosecution.[2]

**1.** We do not understand Easton to be making a claim for a violation of procedural as opposed to substantive due process.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

**2.** It is possible to construe Easton's claim for first amendment retaliation as a claim for malicious prosecution; we consider that separately above.