Eddie ROUNDTREE, Plaintiff,

v.

The CITY OF NEW YORK, the City of New York Police Department, Lee Brown, both individually and as Commissioner of the City of New York Police Department, Diana Nix, "John Doe" and "Richard Roe", et al., Defendants.

No. CV–91–2398.

United States District Court, E.D. New York.

Nov. 20, 1991.

**616**

Jacqueline I. Meyer, Bondy & Schloss, New York City, for plaintiff.

Rebecca Northey, Asst. Corp. Counsel, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is a civil rights action brought under 42 U.S.C. Sections 1981, 1983, and 1988 by Eddie Roundtree against the City of New York, the City of New York Police Department (the "Police Department"), Lee Brown (both individually and as Commissioner of the Police Department), Diana Nix (an officer of the Police Department), and unnamed individual police officers of the Police Department. The plaintiff alleges that the defendants "illegally arrested, illegally searched, illegally detained and illegally assaulted" him and that the defendants thereby violated his civil rights under the Fourth, the Fifth, and the Fourteenth Amendments to the federal Constitution. Complaint ¶¶ 35–36. Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion of the defendants is granted in part and denied in part.

## FACTS

The defendants concede—as concede they must for the purposes of this motion—the truth of the facts as alleged by the plaintiff in his complaints. The plaintiff, Mr. Roundtree, is a black male. At the time of the events that gave rise to his complaint, he was employed as a chauffeur. On July 10, 1990, Mr. Roundtree was driving a large sedan through Queens, New York; he was wearing a coat, a tie, and dark sunglasses. While stopped at an intersection in Queens, the plaintiff gave a match to a passerby. Soon thereafter, he was detained by police officers who searched, arrested, and handcuffed the plaintiff; they told him that he was under arrest for possession of cocaine. Then, the police officers "physically and with undue force, pushed plaintiff into one of ... two unmarked [police] cars...." Complaint ¶ 17.

The police took the plaintiff to the 103rd police precinct at about 7:30 p.m. Mr. Roundtree was detained there for several hours during which time he was denied use of a lavatory; he was then subjected to a strip search, and he was photographed and fingerprinted. At about midnight, he was taken to the 110th precinct where he spent the night. During this time, he was not allowed to make a telephone call or to consult with an attorney.

Mr. Roundtree was not provided with food until 10:00 a.m. on the morning of July 11, 1991. At that time, he was given a "stale bologna and cheese sandwich and sour milk." Complaint ¶ 20. At about 2:30 p.m. that day, plaintiff was transported to court in Kew Gardens, New York; there, he was subjected to a "pat down". Complaint ¶ 22. Finally, Mr. Roundtree, who contends that he had no cocaine in his possession at the time of his arrest, pleaded guilty to disorderly conduct and paid a $100 fine. He alleges that his plea was entered on the advice of counsel that such a plea was the "most expeditious way for him to be released from custody and to return to his job." Complaint ¶ 24.

Plaintiff then filed this civil rights action in which he alleges that the municipal defendants engage in "a custom and practice of routinely conducting drug sweep roundups by targeting certain areas known for excessive illegal drug activity, and rounding up persons walking or driving on particular blocks within these known drug areas." Complaint ¶ 29. Mr. Roundtree alleges that his arrest and detention were executed pursuant to "these tactics". Complaint ¶ 30. Plaintiff further contends that the police officer defendants violated

his constitutional rights "by the unlawful and wrongful seizing of plaintiff's person without probable cause, by causing him to be unlawfully detained and incarcerated on serious charges that they knew or should have known were false, by the unlawful seizing of plaintiff's person in clear violation of due process, and by the knowing and wrongful submission of false data regarding the transaction that led to plaintiff's arrest." Complaint ¶ 36. Plaintiff appears also to allege unconstitutional search of his person, Complaint· ¶ 35; excessive use of force in his arrest, Complaint ¶¶ 17, 35; punishment without due process of law, Complaint ¶ 37; invasion of his privacy, Complaint ¶ 32; and failure by the defendants "to protect [his] personal rights" while he was detained, Complaint ¶ 32.

Mr. Roundtree states that "due [sic] solely to the acts of the defendants ... plaintiff was denied his fundamental rights, was deprived of his liberty and forced to answer criminal charges. He was forced to undergo the mental anguish and strain of these proceedings; and will bear lasting and permanent mental scars of the ordeal." Complaint ¶ 38. Finally, he maintains that "[a]s a proximate result of defendants' actions, plaintiff was greatly humiliated, injured in his reputation and suffered great pain and mental anguish, all to plaintiff's damage in the sum of $1,000,000.00 for emotional pain and suffering." Complaint ¶ 40. He therefore seeks compensatory and punitive damages in that amount.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed upon motion for "failure to state a claim upon which relief can be granted." This provision of Rule 12(b)(6) is "a lineal descendant of the common law general demurrer." Wright & Miller, Federal Practice and Procedure: Civil 2d § 1355. As such, "the complaint is construed in the light most favorable to the plaintiff and its allegations are taken to be true." *Id.* at § 1357. Thus, "in ruling on a 12(b)(6) motion, a court is required to accept the material facts alleged in the complaint as

true...." *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991) (citing *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam)).

■ That is, a motion under Rule 12(b)(6) cannot present any question of fact; rather, such a motion presents only the question of whether or not the complaint has set forth a legally cognizable claim. For this reason, as stated in *Easton,* at 1014–15:

> [The court may not dismiss an action under Rule 12(b)(6)] "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46 [78 S.Ct. 99, 101–02, 2 L.Ed.2d 80] (1957); *see also Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991).

This admonition not to dismiss under Rule 12(b)(6) has been construed as all the more applicable if the complaint alleges a violation of civil rights. *Easton,* at 1015.

■ Here, plaintiff alleges first a violation of 42 U.S.C. Section 1981. That section provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

As is clear from the text of this statute, "[t]he *sine qua non* of a complaint under section 1981 is a showing of racial discrimination." *Smith v. Dallas County Board of Education,* 480 F.Supp. 1324, 1337 (S.D.Ala.1979) (citing *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968)). The plaintiff here has made no allegation of racial discrimination; as such, his Section 1981 claim must be dismissed.

■ Second, the plaintiff states in his complaint that he proceeds as well under 42

U.S.C. Section 1988. This section does not, however, provide a cause of action; rather, it governs actions or proceedings brought to enforce other civil rights provisions (such as Section 1981 or Section 1983).

Third, as to his Section 1983 claim, the plaintiff alleges that the defendants denied him the rights secured to him under the Fourth, the Fifth, and the Fourteenth Amendments to the Constitution. Complaint ¶ 36. However, the plaintiff inexplicably contends in his opposition papers that he does not intend to state a claim for "false arrest" or for "illegal search" or for "assault or excessive force". Plaintiff's Memorandum of Law at 1–2. He states: "It is not by the individual acts (*i.e.*, search, arrest and detention) that plaintiff was deprived of his constitutional rights. It is by the totality of the circumstances visited upon him by defendants' implementation of their policy." *Id.* at 11. And yet plaintiff refers the court to paragraphs 31, 37, and 38 of his complaint as the source of his allegations that his rights under "the Fourth, Fifth and Fourteenth Amendments to the Constitution were violated." *Id.* at 10. Elsewhere in his papers he alleges that he suffered:

> [A] deprivation of liberty, a search incident to arrest, an invasion of privacy, an assault following the arrest, and a failure to protect his personal rights while under arrest ... in violation of 42 U.S.C. §§ 1981, 1983, and 1988....

*Id.* at 4.

■ Although the plaintiff appears somewhat confused as to whether or not his constitutional rights were violated, he cannot escape the requirement that, in order to maintain an action under 42 U.S.C. Section 1983, he must allege a violation of at least *one* of his federal rights. *See Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979) ("The first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' "). It is not enough for the plaintiff to allege that there were constitutional violations " 'in the air, so to speak....' " *Cf. Palsgraf v. Long Island Railroad Co.,* 248

N.Y. 339, 341, 162 N.E. 99 (1928) (Cardozo, C.J., quoting Pollock, *Torts* 455 (11th ed.)). Hence, despite the opaque and inconsistent submissions of the plaintiff, it is necessary for this court to identify those rights to which plaintiff alludes in his complaint and to determine whether he has stated a claim as to their violation as required by Section 1983.

Among the many rights mentioned by plaintiff, those for which he alleges a factual basis are: (1) unconstitutional seizure of the plaintiff's person; (2) unconstitutional search of his person; (3) unconstitutional detention; (4) use of excessive force in his arrest; and (5) punishment without due process of law. These five allegations are considered individually in the paragraphs that follow.

■ Plaintiff also makes three other allegations: that the defendants committed "knowing and wrongful submission of false data regarding the transaction that led to plaintiff's arrest" (complaint ¶ 36); that the defendants invaded his privacy (complaint ¶ 32); and that the defendants failed to protect his personal rights while under arrest (complaint ¶ 32). Of these, the first does not present even a colorable claim of a violation of a constitutional or other federal right; it must therefore be dismissed. The second is not grounded on any specific allegation of fact and must therefore be dismissed as conclusory. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) ("Appellants' general and conclusory allegation, without more ... does not meet the requisite standard for pleadings in a § 1983 action. Thus ... the district court ... could have dismissed the complaint for failure to state a claim."). And the third claim appears to be, at best, a nebulous restatement of the other five allegations concerning violations of the plaintiff's rights under the Fourth, the Fifth, and the Fourteenth Amendments. Hence, none of these three additional allegations states a claim upon which relief can be granted. As such, all three must be dismissed.

## 1. Unconstitutional Seizure of the Plaintiff's Person

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

This provision has been construed to require that an arrest must be grounded in probable cause, *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964) ("Whether [an] arrest was constitutionally valid depends ... upon whether, at the moment the arrest was made, the officers had probable cause to make it...."); hence, the arrest of an individual without probable cause is an unconstitutional "seizure" of that person in violation of the Fourth Amendment. Such a violation may thus give rise to a claim under Section 1983.

 However, a Section 1983 claim predicated on an arrest without probable cause is absolutely barred if the plaintiff was convicted of the offense for which he was arrested. The Second Circuit so held in the leading case of *Cameron v. Fogarty,* 806 F.2d 380, 388 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987):

[W]e conclude that the proper accommodation between the individual's interest in preventing unwarranted intrusions into his liberty and society's interest in encouraging the apprehension of criminals requires that § 1983 doctrine be deemed, in the absence of any indication that Congress intended otherwise, to incorporate the common-law principle that, where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting the arrest was made without probable cause.

*See also Malady v. Crunk,* 902 F.2d 10, 11 (8th Cir.1990) (following *Cameron*); *King*

*v. Goldsmith,* 897 F.2d 885, 886 (7th Cir. 1990) (Posner, J., remarking that *Cameron* "serv[es] the limited function of preventing an end run around the principle that an unlawful arrest does not bar prosecution of the arrested person."); *Walker v. Schaeffer,* 854 F.2d 138, 143 (6th Cir.1988) ("We ... agree with the conclusion reached in *Cameron v. Fogarty....*"); *Liner v. Ward,* 754 F.Supp. 32, 33 (S.D.N.Y.1991) ("In view of these findings and the conviction of the plaintiff, there is no Section 1983 action" for false arrest); *Giannini v. City of New York,* 700 F.Supp. 202, 205 (S.D.N.Y.1988) ("[A] section 1983 action based on false arrest or false imprisonment is barred by a plaintiff's conviction for the offense for which he was arrested.").

 Although the plaintiff in *Cameron* had been convicted *at trial* of the offense for which he was arrested, entry of a guilty plea also operates as a defense to a Section 1983 action for arrest without probable cause. *Keyes v. City of Albany,* 594 F.Supp. 1147 (N.D.N.Y.1984) ("[A] § 1983 claim for false arrest or false imprisonment is barred by a plea of guilty...."). That is, conviction at trial or by plea " 'conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury, or other corrupt means.' " *Cameron,* 806 F.2d at 387 (quoting Restatement (Second) of Torts § 667(1)); *Unger v. Cohen,* 718 F.Supp. 185, 187 (S.D.N.Y.1989) ("[C]onviction is viewed as establishing the existence of probable cause.... [But] an invalid judgment of conviction would not support the defense."). Finally, a plea of guilty to a charge lesser than that for which plaintiff was arrested also bars a Section 1983 action for arrest without probable cause. *Keyes,* 594 F.Supp. at 1152, 1155 (Section 1983 action for arrest without probable cause barred for plaintiff who had been arrested for assault but had pleaded guilty to disorderly conduct).

 The application of *Cameron* to this case could not be more straightforward: Plaintiff was arrested for possession of cocaine, and he pleaded guilty to disorderly conduct. He now contends that the arrest

was without probable cause and was therefore in violation of the Fourth Amendment to the United States Constitution. He does not claim that his conviction was "obtained by fraud, perjury, or other corrupt means." On these facts as alleged by the plaintiff, his plea of guilty is a complete defense to his claim of unconstitutional seizure of his person. Thus, insofar as plaintiff asserts a claim of arrest without probable cause, that claim must be dismissed.

### 2. Unconstitutional Search of the Plaintiff's Person

■ Just as the Fourth Amendment prohibits seizures of persons effected without probable cause, so too a search must generally be conducted pursuant to a warrant. *Marshall v. Barlow's Inc.*, 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978) ("This Court has already held that warrantless searches are generally unreasonable...."). However, it is a well-established exception to this principle that an individual validly arrested may be searched without a warrant as an incident to the arrest. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973) (lawful custodial arrest authorizes "a full search of the person" arrested).

■ Under *Robinson*, the arrest must be "lawful" in order to justify any search incident to that arrest; but such lawfulness is readily apparent in this case: It would be incongruous to maintain that the ultimate conviction of the plaintiff establishes probable cause for the arrest itself but that the validity of the arrest nonetheless remains open as to any searches incident to that arrest. Under *Cameron*, the guilty plea of a plaintiff demonstrates not merely the probable cause for the arrest but the *lawfulness* of it; hence, insofar as the constitutionality of a search incident to an arrest derives from the validity of the arrest itself, *Cameron* compels the conclusion that a guilty plea provides a defense to any

Section 1983 claim brought for the search of an arrested person that is conducted as an incident to that arrest.

■ For this reason, the first two searches to which the plaintiff was subjected—the initial "frisk" and the strip search at the police station—cannot be the genesis of a claim by the plaintiff that his rights under the Fourth Amendment were violated: His guilty plea provides a complete defense to the claim that these searches incident to arrest were unconstitutional—just as his guilty plea provides a complete defense to the claim that the arrest itself was unconstitutional.[1] Thus, insofar as he asserts a Section 1983 claim of unconstitutional search, it must be dismissed.

### 3. Unconstitutional Detention of Plaintiff

■ Plaintiff further alleges that he was "illegally detained" by the defendants. Complaint ¶ 35. As with his other allegations that concern the legitimacy of his arrest, this contention fails to state a claim upon which relief can be granted. Under *Cameron*, plaintiff's subsequent conviction establishes probable cause for his arrest; thus, it also establishes the legitimacy of his arrest. In that plaintiff contends that he was detained as a *consequence* of his arrest, then, this claim fails as a matter of law.

■ Even if plaintiff seeks to establish that the *length* of his detention constituted a violation of his rights under the Fourth Amendment, he cannot establish a valid claim. In *County of Riverside v. McLaughlin*, —— U.S. ——, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), the Supreme Court held that detention of an individual for 48 hours prior to a hearing to determine probable cause for his arrest does not violate the Fourth Amendment. Here, a fortiori, detention of the plaintiff for 24 hours prior to arraignment—after an arrest for which

---

**1.** It is not clear whether the plaintiff asserts that the "pat down" at the courthouse was an unconstitutional search. Regardless, such a search is clearly constitutional as an administrative search to ensure the security of the courthouse.

*McMorris v. Alioto*, 567 F.2d 897, 898, 901 (9th Cir.1978) ("limited search conducted as a condition of entering a state courthouse" held not to be violation of Fourth Amendment).

probable cause is subsequently established—cannot constitute a constitutional violation. Hence, insofar as the plaintiff makes out a claim that either the fact of his detention or the length of his detention denied him his constitutional rights under the Fourth Amendment, the claim must be dismissed.

### 4. Use of Excessive Force

Plaintiff claims in his complaint that he was "illegally assaulted" by the arresting police officers, Complaint ¶ 35; he alleges that the officers "physically and with undue force, pushed plaintiff into one of the two unmarked [police] cars....." However, plaintiff alleges no physical injury by reason of this "undue force"; rather, he claims to have suffered "emotional pain and suffering." Complaint ¶ 40.

In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court made clear that a Section 1983 action that alleges use of excessive force is to be analyzed with reference to "the specific constitutional right allegedly infringed by the challenged application of force." *Graham*, 109 S.Ct. at 1870. The Court noted that "[i]n most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments...." *Id.* As in *Graham*, it is clear that the claim of the plaintiff here must be analyzed under the Fourth Amendment as a challenge to the reasonableness of the seizure of the plaintiff during his arrest. *Id.* at 1871 ("Where, as here, the excessive force claim arises in the context of an arrest ... of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment....").

Thus, the inquiry necessary to consider whether the plaintiff here has stated a claim of excessive force must proceed along the objective lines of reasonableness:

> The "reasonableness" of a particular use of force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Id.* at 1872. A court must therefore adopt the "perspective of a reasonable officer on the scene [of the arrest]," and it must understand that " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ...' violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

██ *Graham*, then, clearly establishes that a claim of excessive force in an arrest is to be evaluated on a "reasonableness" standard; it necessarily follows that such a claim may be subject to dismissal under Rule 12(b)(6). For example, if the plaintiff does not allege an unreasonably excessive use of force, he has failed to state a claim upon which relief can be granted. Still, the standard for dismissal under Rule 12(b)(6) is high: It must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley, supra*, 355 U.S. at 45–46, 78 S.Ct. at 102. Here, then, dismissal of the plaintiff's claim of excessive force is appropriate only if it is absolutely certain that he can establish no facts to show that he was subjected to an unreasonable use of force by the arresting officers.

Thus, the question of whether the plaintiff here has stated a claim is a question of law; as such, it is a question that the court, in the first instance, must endeavor to answer:

> When a case arises in which the standard of conduct, pure and simple is submitted to the jury, the explanation is plain. It is that the court, not entertaining any clear views of public policy applicable to the matter, derives the rule to be applied from daily experience, as it has been agreed that the great body of the law of tort has been derived. But the court further feels that it is not itself possessed of sufficient practical experience to lay down the rule intelligently. It conceives that twelve men taken from the practical part of the community can aid its judgment. Therefore it aids its

conscience by taking the opinion of the jury.

O.W. Holmes, *The Common Law* 98 (Mark DeWolfe Howe, ed. 1963). That is, the question whether or not particular conduct falls below the applicable standard required by the law—such as the reasonableness of the use of force in this case—is submitted to the jury only when the court finds itself unable to discern a clear answer. The necessary corollary, then, is that "[a] judge who has long sat at *nisi prius* ought gradually to acquire a fund of experience which enables him to represent the common sense of the community in ordinary instances far better than an average jury." *Id.* at 99.

However, a particular case may also present facts as to which the application of the proper legal standard is so clear that no useful purpose would ever be served by permitting a jury to decide the question. Such cases stake out the poles between which lie the more difficult applications that are reserved for the jury. *Id.* at 101. As Holmes illustrates this point:

> If the whole evidence in the case was that a party, in full command of his senses and intellect, stood on a railway track, looking at an approaching engine until it ran him down, no judge would leave it to the jury to say whether the conduct was prudent. If the whole of the evidence was that he attempted to cross a level track, which was visible for half a mile each way, and on which no engine was in sight, no court would allow a jury to find negligence. Between these extremes are cases which would go to the jury.

*Id.* at 102. The counsel of Holmes is as prudent as his analysis is accurate: When the plaintiff presents a case the facts of which indicate that he stands very near one of the two poles, the court should dispose of his claim as a judgment of law.

▇▇▇▇ Here, this court must consider as true all the facts alleged by the plaintiff, and it must further determine whether there is *any* set of facts that he could prove to support his claim. Nonetheless, despite these benefits of doubt afforded

him by the case law under Rule 12(b)(6), this court must conclude that the plaintiff has failed to state a claim of excessive use of force. To allege that he was "with undue force, pushed ... into one of the ... cars" and that his injuries from this push were "emotional pain and suffering" is not to state a claim that the use of force was "unreasonable". Indeed, to conclude that a "push" that does not cause the slightest of physical injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that *any* physical contact by an arresting officer with the arrested person is actionable. This would transform the constitutional wrong of excessive force in arrest into the common law tort of battery; and it would reduce the holding in *Graham* into an empty proposition against which no use of force is reasonable as a matter of law. With deference to Holmes, a judge need not have "long sat at *nisi prius* " to conclude that the plaintiff here does not state a claim of use of excessive force. Accord: *Foster v. Metropolitan Airports Commission*, 914 F.2d 1076, 1082 (8th Cir.1990) ("[T]he officer's use of force in pulling [plaintiff] from the car and handcuffing him was reasonable under the circumstances, and no juror could reasonably find otherwise."). Compare: *Simpson v. Saroff*, 741 F.Supp. 1073, 1078 (S.D.N.Y.1990) (allegations by plaintiff of "punched stomach, swollen and bleeding wrists from the tight handcuffs, as well as a faintly detectable scar on her left wrist" states claim of use of excessive force under Section 1983). What the court remarked in *Mark v. Caldwell*, 754 F.2d 1260, 1261 (5th Cir.), *cert. denied*, 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985), in affirming dismissal of a Section 1983 claim for use of excessive force is true here as well:

> At the hearing, [the plaintiff] testified that at the time of his arrest one of the officers slapped him several times with his open hand. He further testified that he was not injured by the slaps and that they caused no bleeding, required no medical attention, and were too weak to knock him down. Thus, on his own evidence, they amounted to more of an affront than an injury. Assuming the

truth of his account, and however reprehensible such conduct by a policeman may be, it does not rise to such a level that redress may be had for it under 42 U.S.C. § 1983.

In the present case, whether or not this "push ... seem[s] unnecessary in the peace of a judge's chambers," it is manifest that the push was not unreasonable; it is thus manifest that this case does not fall in the realm of the jury. Thus, even the most generous construction of the plaintiff's complaint leaves no doubt that "the plaintiff can prove no set of facts" to support his claim of use of excessive force. This claim must therefore be dismissed.

### 5. *Punishment without Due Process of Law*

■ Finally, plaintiff alleges that the defendants deprived him of his right "to be free from punishment without due process" of law. In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court recognized that conditions of pretrial detention may constitute a violation of due process:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

*Bell*, 441 U.S. at 535, 99 S.Ct. at 1872 (footnotes omitted). Thus, the conditions under which an arrested person is detained before trial will violate due process if they constitute "punishment" rather than regulatory restraints.

The Court noted there that it "is all but impossible to compress the distinction [between punitive measures and regulatory restraints] into a sentence or a paragraph...." *Id.* at 537, 99 S.Ct. at 1873. It did hold, however, that "[a]bsent a showing of an expressed intent to punish on the part of detention facility officials ..." certain presumptions must be relied upon. *Id.* at 538–39, 99 S.Ct. at 1874:

> Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* at 539, 99 S.Ct. at 1874 (footnote omitted).

Here, the plaintiff alleges that, while he was detained by the defendants, he was denied the use of lavatory facilities for several hours, that he was not permitted to use a telephone to contact an attorney, and that the only food he was given during his detention was barely edible. On these allegations, it does not appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rather, it is not difficult to conclude that denial of access to a lavatory or to a telephone after arrest, as well as providing food poorly suited for human consumption, might well be "arbitrary or purposeless" and "a restriction or condition ... not reasonably related to a legitimate [governmental] goal" such that, accordingly, an intent to punish may be inferred. That is, these allegations clearly state a claim that the plaintiff was subjected to conditions of punishment without due process of law. *See, e.g., Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir.1986) ("Jails must provide 'reasonably adequate' sanitation."); *Duran v. Elrod*, 542 F.2d 998, 1000 (7th Cir.1976) (allegations about "lack of sufficient telephones" for pretrial detainees state claim of punishment without due process).

As an additional matter, the claims of the plaintiff against the municipal defendants must be dismissed. Under *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), a city may be liable on a Section

1983 claim only "when execution of a government's policy or custom ... inflicts the injury...." The Second Circuit has construed *Monell* to require that the plaintiff "plead and prove" three elements:

> (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.

*Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). Furthermore, the court there stated that "[a]bsent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City." *Id.*

 Here, the plaintiff has alleged that the municipal defendants, as an "official policy or custom", conduct "drug sweep roundups by targeting certain areas known for excessive illegal drug activity, and rounding up persons walking or driving on particular blocks within these known drug areas." Complaint ¶ 29. However, the plaintiff fails to allege the requisite "causal link" between this "policy or custom" and the one denial of his constitutional rights about which he has stated a claim. That is, the "policy or custom" that he does allege—"drug sweep roundups"—is unrelated to the constitutional harm of punishment without due process of law. As such, the *Monell* claims against the municipal defendants must be dismissed.[2]

 Finally, the plaintiff—apparently aware that his papers thus far have not been artfully drafted—has requested that the court, rather than dismiss for failure to state a claim, grant the plaintiff leave to amend his pleadings in order "to remedy the defect." Plaintiff's memorandum of law at 14. He cites *Deck v. Shanman,* 227 F.Supp. 26, 29–30 (S.D.N.Y.1964) and *Bishop v. Commodity Exchange, Inc.,* 564 F.Supp. 1557, 1562 (S.D.N.Y.1983) for the proposition that leave to amend a complaint may be granted if the court determines that the complaint is so unclear that a motion under Rule 12(b)(6) cannot be decided adequately.

These cases are inapposite to the present case: Here, the plaintiff pleads at least eight violations of his rights, and five of these are at least colorable constitutional claims. Of those five, three are barred by the plaintiff's plea of guilty, one fails to allege facts that cross the relevant threshold of reasonableness, and the last allegation does in fact state a claim upon which relief can be granted. Thus, although the complaint is poorly crafted, it is not impossible for this court to discern from it how the defendants' motion under Rule 12(b)(6) should be decided. Further, the same unsteady hand that requests leave to amend from the court also drafted the remainder of the plaintiff's memorandum of law—a memorandum that simply compounds the ambiguities of the complaint. The papers of the plaintiff show that he has failed to state a claim as to every allegation except that of punishment without due process; and the facts alleged by the plaintiff show that there is no other claim that he could properly state. An amended complaint—one that promises to be of no higher quality than the first—is unnecessary for the disposition of this motion.

## CONCLUSION

The court grants in part and denies in part the motion of the defendants to dismiss the complaint under Rule 12(b)(6) for failure to state a claim; all claims—including the *Monell* claim—are dismissed with the exception of the plaintiff's claim that he was subjected to punishment without due process of law; as to that claim, the motion of the defendants to dismiss is denied.

SO ORDERED.

---

**2.** The *Monell* claim in plaintiff's action appears to be predicated on the constitutional allegations for which he failed to state a claim (such as arrest without probable cause). To the extent that the plaintiff seeks to plead a *Monell* claim with respect to his action for punishment without due process, the court hereby grants him leave to amend his complaint.