Andrew Frank **KARACSONYI**, Plaintiff,

v.

Bill **RADLOFF**, Unit Manager,
Federal Bureau of Prisons
Employee, Defendant.

No. 92 Civ. 471 (HB).

United States District Court,
N.D. New York.

Jan. 11, 1995.

Andrew F. Karacsonyi, White Deer, PA, pro se.

William C. Pericak, Asst. U.S. Atty., Albany, NY, for Bill Radloff.

*OPINION AND ORDER*

BAER, District Judge.

Andrew F. Karacsonyi, *pro se*, brings this action under 42 U.S.C. § 1983 against Bill Radloff, a former manager of the Delaware Unit of the Ray Brook Federal Correctional Institution, alleging that Radloff violated his constitutional rights by penalizing him for not participating in the Inmate Financial Responsibility Program ("IFRP"). Radloff re-

quests the Court to (1) reconsider the August 9, 1993 Report–Recommendation of Magistrate Judge Gustave J. Di Bianco, which granted Radloff's motion for summary judgment as to all claims except Karacsonyi's claims regarding the IFRP; or (2) entertain this motion as a supplemental motion for dismissal, pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for summary judgment, pursuant to Fed.R.Civ.P. 56.

For the reasons that follow, Radloff's motion, considered as a supplemental motion to dismiss, is GRANTED in part and DENIED in part.

## I. *Background*

Plaintiff Karacsonyi was convicted in the United States District Court, District of Vermont, of interstate transportation of explosive materials. On December 17, 1991, Judge Franklin S. Billings, Jr. sentenced him to incarceration for sixty-three months and ordered him to pay restitution in the amount of $3,628.61.

While in federal prison, Karacsonyi refused to execute Form BP–455, the Inmate Financial Responsibility Withdrawal Request, wherein an inmate authorizes, or refuses to authorize, the correctional institution to withdraw funds directly from an inmate's prison account in order to make financial obligation payments under the Inmate Financial Responsibility Program (the "IFRP"). As a penalty for refusing to participate in the IFRP, Karacsonyi was placed in the lowest housing status (a four-man cell), denied the opportunity to work in the Federal Prison Industries ("Unicor"), and denied the opportunity for a furlough.

## II. *DISCUSSION*

■ Karacsonyi brings this action under 42 U.S.C. § 1983, claiming that his failure to sign Form BP–455 did not constitute a refusal to participate in the IFRP, and that even if it did constitute a refusal, he was exempt

from participating in the program. In the alternative, Karacsonyi contends that the penalties he received for non-participation violated his constitutional rights.[1] Conversely, Radloff contends that Karacsonyi's refusal to sign Form BP–455 was tantamount to a refusal to participate in the IFRP, from which Karacsonyi was not exempt, and that the penalties for non-participation are constitutional.

### A. *Standard of Review*

Because the record does not indicate that the parties had an opportunity to take discovery on certain issues presented here, the Court will consider defendant's motion as a supplemental motion for dismissal. When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

### B. *Karacsonyi's Claims*

The IFRP is designed to encourage inmates in federal facilities to meet their legitimate financial obligations. Under the IFRP, a portion of an inmate's salary is deducted in

---

1. Section 1983 provides federal relief for violations of federal rights by persons "acting under color of *state* law." 42 U.S.C. § 1983 (emphasis added). Because Karacsonyi is challenging a *federal* official's enforcement of a federal regulation, section 1983 is inapplicable. However, in construing Karacsonyi's *pro se* complaint liberal-

ly, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the court will treat this claim as a *Bivens* action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), with jurisdiction under 28 U.S.C. § 1331.

order to satisfy court ordered restitution, and certain other financial obligations. 28 C.F.R. § 545.10—545.11. Inmates who refuse to participate in the IFRP are subject to certain penalties, including those imposed on Karacsonyi—assignment to the lowest housing status, ineligibility to work in Unicor, and ineligibility to receive a furlough. 28 C.F.R. § 545.11(d). The Second Circuit has upheld the IFRP, stating that it "serves valid penological interests and is fully consistent with the Bureau of Prison's authorization ... to provide for rehabilitation and reformation." *Johnpoll v. Thornburgh,* 898 F.2d 849, 851 (2d Cir.), *cert. denied,* 498 U.S. 819, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990); *see also Muhammad v. Moore,* 760 F.Supp. 869, 870 (D.Kan. 1991) (citing cases).

## 1. Participation in the IFRP.

■ Karacsonyi cannot reasonably argue that his failure to sign Form BP–455 did not amount to a refusal to participate in the IFRP. Legitimizing this argument would provide inmates with an obvious way around the penalties for non-participation. If the Court adopted such reasoning, any prisoner wishing to dodge the IFRP without penalty could merely decline to sign the form. I doubt Congress had any such intention.

■ Karacsonyi's contention that he is exempt from participating in the IFRP equally lacks merit. He claims that he was improperly classified as refusing to participate in the IFRP, instead of being classified as having "no obligation" to participate. The Program Statement for the IFRP states that the "no obligation" category is used, *inter alia,* "for an inmate who has a financial obligation as a condition of supervised release or parole, *provided* this condition is clearly documented." Program Statement ¶ 7(b). According to Karacsonyi, his obligation to pay restitution was a condition to his supervised release. Karacsonyi's Judgment and Commitment Order, however, did not stay his obligation to pay restitution. Because his restitution was due and payable during his incarceration, Karacsonyi was correctly categorized as refusing to participate in the IFRP.

## 2. Constitutional Claims.

■ Karacsonyi claims that his constitutional rights were violated by defendant's refusal to allow him to work in Unicor. Prison officials, however, have broad discretion in denying federal inmates the opportunity to participate in Unicor. *Gladson v. Henman,* 814 F.Supp. 46, 47 (D.Kan.1993); *Smith v. Gray,* 1987 WL 28660, *1 (S.D.N.Y.1987). Moreover, "a federal inmate's participation in the Unicor program ... does not confer upon an inmate that degree of entitlement sufficient to trigger constitutional due process." *Smith,* 1987 WL at *1. Accordingly, this claim is without merit.

■ Karacsonyi next claims that defendant's denial of Karacsonyi's furlough requests violated his constitutional rights. A furlough "is not a right, but a privilege granted an inmate under prescribed conditions...." 28 C.F.R. § 570.30. Although the regulations state the conditions that must be satisfied before a furlough is granted, the regulations do not require the granting of a furlough upon the satisfaction of these conditions. 18 U.S.C. § 4082. 28 C.F.R. §§ 570.32, 570.34.–.35. As one court noted, "it is apparent that the regulations were not intended to create any entitlement to a furlough under any circumstances." *Gilliam v. Quinlan,* 608 F.Supp. 823, 834 (S.D.N.Y. 1985). Therefore, this claim also lacks merit.

■ Finally, Karacsonyi contends that his placement in a four-person cell rises to the level of an Eighth Amendment claim for cruel and unusual punishment. According to a Ray Brook FCI prison official, the four-person cell where Karacsonyi was housed measures approximately 115 square feet and contains two bunk beds, a sink with hot and cold running water, a toilet, and a stand up locker with four individual compartments.

The Eighth Amendment prohibits punishments, including conditions of confinement, which "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). In *Rhodes,* the Supreme Court held that double celling inmates in 63 square foot cells in response to the increase in Ohio's statewide prison population was not unconstitutional because it did not lead to deprivations of essential food, medical care or sanitation. *Id.* at 348, 101 S.Ct. at 2400. The Court, however, mentioned numerous

studies cited by the District Court, all recommending that an inmate receive at least 50–55 square feet of living space. *Id.* at 343 and n. 7, 101 S.Ct. at 2398 and n. 7; *see also Lareau v. Manson,* 651 F.2d 96, 106 (2d Cir.1981) (American Correctional Association recommends 60 square feet of cell space for inmates confined to their cells for 10 hours per day or less, and 80 square feet for inmates confined to their cells for more than 10 hours per day); *Alston v. Coughlin,* 668 F.Supp. 822, 832 (S.D.N.Y.1987) (American Correctional Association recommends no less than 50 square feet of living space per prisoner housed in multiple occupancy room). Moreover, Justice Brennan stated that he did not "have ... the slightest doubt that 63 square feet of cell space is not enough for two men [and that] every major study of living space in prisons has so concluded...." *Rhodes* 452 U.S. at 366, 101 S.Ct. at 2409 (Brennan, J., concurring); *see also Benjamin v. Malcolm,* 646 F.Supp. 1550, 1554 (S.D.N.Y. 1986) (allowing confinement of inmates in 40 square feet of space only for a limited and definite period as an emergency measure); *Gates v. Collier,* 423 F.Supp. 732 (N.D.Miss. 1976), *aff'd,* 548 F.2d 1241 (5th Cir.1977) (fifty square feet of living space per inmate is minimal acceptable space requirement).

In this case, Karacsonyi shared 115 square feet of space with three other inmates, translating into roughly 29 square feet of living space per man. Questions remain regarding the duration of this living situation, and whether it led to deprivations of essential needs, such as sanitation. Accordingly, in light of the above-cited cases, this Court cannot say that, based on the pleadings, Karacsonyi is not entitled to relief for his Eighth Amendment claim. On the contrary, Karacsonyi is entitled to offer evidence to support this claim.

## III. *CONCLUSION*

Consistent with this opinion, defendant's motion to dismiss is GRANTED in part, and DENIED in part.

SO ORDERED.