**Daniel SNOW, Plaintiff,**

v.

**VILLAGE OF CHATHAM; Michael McDowell, individually and in his official capacity as a police officer of the Village of Chatham Police Department; Juanita O'Rourke; Kevin P. O'Rourke; and Kevin J. Boehme, individually and in his official capacity as Chief of Police of the Village of Chatham Police Department, Defendants,**

**Juanita O'Rourke and Kevin P. O'Rourke, Counterclaimants,**

v.

**Village of Chatham and Michael McDowell, Cross-defendants.**

**No. 1:97–CV–1297(LEK/DRH).**

United States District Court, N.D. New York.

Jan. 21, 2000.

324

Jens G. Lobb, Office of Jens G. Lobb, Catskill, NY, for Daniel Snow.

Brian W. Devane, Dreyer, Boyajian Law Firm, Albany, NY for Village of Chatham, Michael McDowell.

Brian W. Devane, Dreyer, Boyajian Law Firm, Albany, NY, Seth H. Agata, Koweek, Cranna Law Firm, Hudson, NY, for Juanita O'Rourke, Kevin P. O'Rourke.

## *MEMORANDUM—DECISION AND ORDER*

KAHN, District Judge.

Plaintiff commenced this action under 42 U.S.C. § 1983, alleging *inter alia* viola-

tions of his constitutional rights, false arrest, and false imprisonment. Presently before the Court are summary judgment motions by (i) defendants Juanita and Kevin O'Rourke (the "O'Rourke Defendants"), and (ii) defendants Town of Chatham, Chief Kevin J. Boehme, and Officer Michael McDowell (the "Village Defendants"). For the reasons set forth below, both motions are granted and the case dismissed in its entirety.

## I. BACKGROUND

In June 1996, Dennis Snow, Plaintiff's brother, leased an apartment located at 2 Houseman Ave. in the Village of Chatham, New York, that defendant Juanita O'Rourke owned. At some date prior to October 5, 1996, Plaintiff occupied that apartment. Plaintiff contends that he paid rent and O'Rourke accepted it, thereby consenting to his tenancy, and, moreover, that Mrs. O'Rourke expressly informed his father that Plaintiff's occupancy was acceptable.

On October 3, 1996, defendant Juanita O'Rourke's husband, defendant Kevin O'Rourke, contacted the Village of Chatham police to complain that the door to the apartment had been kicked in and that the unit was wrongfully occupied. The police advised Mr. O'Rourke that only his wife, as the sole owner of the premises, could file a complaint, which was necessary for them to take proper action. The following morning, the O'Rourkes completed and signed supporting depositions, which affirmed that the unit had been wrongfully occupied and identified Plaintiff as the likely occupant. In his affidavit, Mr. O'Rourke again stated that the unit's door had been kicked in. Police Chief Boehme informed the O'Rourkes that his department would undertake an investigation and update them on its progress.

Mr. O'Rourke visited the premises the next day, October 5, 1996, and reported to the police that the despite the fact that the lockset was visibly broken, the door had been secured from inside. O'Rourke stated that he had heard someone inside the apartment, knocked, and met with no response. Officer McDowell then accompanied Mr. O'Rourke back to the apartment, and has attested that although they both clearly heard sounds emanating from within, no one answered their repeated knocking. The sounds of rapid toilet flushing then began. O'Rourke informed the officer that whoever was within had no right whatsoever to be present. McDowell then, according to the supporting affidavits, announced his identity as a police officer and demanded that the door be opened. The door opened, Plaintiff appeared, and O'Rourke requested that McDowell arrest Plaintiff. McDowell did so, Mirandized Plaintiff, and in the course of a brief visual inspection located drug paraphernalia and marijuana. McDowell charged Plaintiff with second degree burglary, second degree criminal use of drug paraphernalia, and unlawful possession. According to Plaintiff, all charges were dismissed. (There is some dispute as to whether the Village court where the charges were lodged had the power to dismiss given its limited subject matter jurisdiction.)

Plaintiff maintains that the O'Rourkes were intent on evicting a tenant and fomented a conspiracy with the Chatham police, who, "instead of acting competently and reasonably, without any investigation, blindly obeyed the O'Rourkes and arrested Plaintiff." Plaintiff's Memorandum of Law in Opposition to the Village Defendants' Motion for Summary Judgment filed November 9, 1998 ("Plaintiff's Mem. II"), 4. Plaintiff ascribes police participation in the conspiracy to either Mrs. O'Rourke's attendance of political events at which Chief Boehme was also present, and/or the fact that Mr. O'Rourke grew up in the same town and attended the same schools. *See id.*

## II. ANALYSIS

Plaintiff commenced this action against the O'Rourke Defendants and the Village Defendants, alleging violations of 42

U.S.C. §§ 1983 and 1988. Specifically, Plaintiff alleges violations of his rights under the Fourth, Fifth, Ninth, and Fourteenth Amendments of the Constitution of the United States, as well as various pendent state claims. In all, Plaintiff asserts fourteen causes of action. Both the O'Rourkes and the Village Defendants seek summary judgment.

The standard is well-established. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A material fact is genuinely disputed only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in the light most favorable to the nonmoving party. *City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon the movant's satisfying that burden, the onus then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "but must set forth specific facts showing that there is a genuine issue of fact for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575,

20 L.Ed.2d 569 (1968). Summary judgment is usually unwarranted when the defendant's state of mind is at issue. *Clements v. Nassau County,* 835 F.2d 1000, 1005 (2d Cir.1987). In order to raise a fact issue regarding state of mind, however, there must be solid circumstantial evidence to prove plaintiff's case. *Id.* "Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Cifarelli v. Village of Babylon,* 93 F.3d 47, 51 (2d Cir.1996).

## A. Village Defendants' Motion for Summary Judgment

### 1. Fifth, Ninth, and Fourteenth Amendment Claims

▆▆▆ Plaintiff asserted these claims under 42 U.S.C. §§ 1983 and 1988. Section 1983 does not create substantive rights, but rather provides a vehicle through which federal rights elsewhere conferred may be vindicated. *See Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citing *Baker v. McCollan,* 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). To maintain a successful section 1983 action, "[t]he conduct complained of must have been committed by a person acting under color of state law and must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994). The parties agree that at all relevant times, the Chatham police were acting under color of law and within the scope of their employment.

▆▆▆ As a threshold issue, the Court must determine the source for the alleged constitutional rights that were violated. It is well-established that the Fifth Amendment "governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors." *Brock v. North Carolina,* 344 U.S. 424, 426, 73 S.Ct. 349, 97 L.Ed. 456 (1953). Since the O'Rourke Defendants are private individuals and the

Village Defendants are local actors, Plaintiff's Fifth Amendment claim is not viable.

■ Plaintiff's Ninth and Fourteenth Amendment claims likewise fail. Because the Fourth Amendment provides an explicit textual source of constitutional protection against the sort of physically intrusive government conduct alleged in Plaintiff's assault and battery, false arrest, and false imprisonment claims, that Amendment, and not the more generalized notion of "substantive due process," guides analysis of the Ninth and Fourteenth Amendment violations asserted here. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Constitutional claims arising out of a deprivation of liberty must be examined under Fourth Amendment standards, not due process standards under the Fifth and Fourteenth Amendments. *See Albright,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (while none of the five opinions commands a majority, all opinions agree that the Fourth Amendment provides the source for a § 1983 claim premised on a person's arrest); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 115–16 (2d Cir.1995) (citing *Albright* ). Plaintiff's Ninth and Fourteenth Amendment claims must be dismissed since the Fourth Amendment, and not some generalized concept of substantive due process, provides the constitutional foundation for false arrest claims.

## 2. Fourth Amendment Claim for False Arrest, False Imprisonment, and Malicious Prosecution

■ Plaintiff's § 1983 civil rights therefore represents a claim for false arrest, false imprisonment, and malicious prosecution in violation of the Fourth Amendment.[1] Under New York state law, the existence of probable cause for the arrest would prove fatal to each underlying claim. *See Bernard v. United States,* 25 F.3d 98,

102 (2d Cir.1994) (the existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest"); *Broughton v. State,* 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975) ("In cases where an arrest was made without a warrant, the defendant may establish that the arrest was otherwise justified when it was based on probable cause"); *Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir.1994) (lack of probable cause is an element to make out a prima facie case of malicious prosecution).

■ Contrary to Plaintiff's contention, the Second Circuit has *not* held probable cause is an issue "properly for the jury." *See* Plaintiff's Mem. II, 3. On the record presented, as a matter of law, the information on which the officer acted could constitute probable cause such that no trier of the facts could reasonably find to the contrary. When there is no issue of fact concerning events leading up to an arrest, summary judgment is appropriate. *See, e.g., Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (declaring courts should try to resolve questions of immunity—which turns on probable cause—as early as possible in a litigation); *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995). If Plaintiff were correct, then questions of immunity and probable cause would never be resolved prior to trial, and such is clearly not the case. Here, while the precise facts of the underlying incident are hotly in dispute, the facts available to the Chatham police in making their decision to arrest Plaintiff are undisputed. In such cases, probable cause may be decided as a matter of law. *See Kruppenbacher v. Mazzeo,* 744 F.Supp. 402, 407 (N.D.N.Y.1990).

■ Plaintiff contends that the O'Rourkes had accepted him as their tenant, claiming that he made a $200 rent payment; the O'Rourkes deny ever receiv-

---

1. The Village Defendants' motion characterizes these underlying claims as "pendent state claims" and requests that the Court decline to exercise supplemental jurisdiction over them. These claims, however, form the basis of Plaintiff's alleged Fourth Amendment violation, and disposition of the § 1983 claim dictates consideration of these pendent claims.

ing such a payment, and Plaintiff's credibility is further strained in light of inconsistencies between his testimony and that of his brother, Dennis. *See* Village Defendants' Reply Memorandum of Law filed November 9, 1998, 2, n. 1. An issue of fact therefore does appear, but is irrelevant to the determination of whether the police acted with probable cause since this motion goes to the Village Defendants' knowledge. Officer McDowell, informed by the owners that the apartment was being wrongfully occupied and that they suspected Dennis Snow's brother of being within and engaging in possible drug-related activity, noted that the *door handle had been broken*, that it was secured from within, and heard a toilet flushing.

There is no evidence whatsoever that the police were aware of the possibility that Plaintiff had been paying rent. Indeed, Plaintiff never responded to defendant Officer McDowell's inquiry as to his justification for being in the apartment. Absent such knowledge, they were justified in relying upon the complaint and supporting depositions from the O'Rourkes in making the arrest. That the police permitted two individuals within the apartment to leave *after* entering is puzzling, but irrelevant to the question of whether probable cause existed *at the time* that the police entered.

### 3. Assault and Battery, Excessive Force

■ The existence of probable cause made Plaintiff's arrest valid. A certain amount of restraint is necessary in the process of securing a criminal suspect, and Plaintiff has failed to adequately allege excessive force since the complaint neglects to identify the alleged perpetrators.

### 4. Misuse of Process

■ Abuse of process is simply causing legal process to issue lawfully to accomplish some unjustified purpose, whereas malicious prosecution is maliciously causing process to issue unlawfully. *See*

*Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teacher's Assoc. Inc.,* 38 N.Y.2d 397, 400, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975). Whatever the role of the O'Rourkes, the Village Defendants acted with probable cause, relieving them of liability for misuse of process.

### 5. Qualified Immunity

■ Police officers are qualifiedly immune from suits for civil damages alleging violations of federal law. When the circumstances surrounding an officer's actions are undisputed and when the undisputed facts, together with inferences that may properly be drawn from those facts, show that the officer is entitled to qualified immunity, the issue of qualified immunity may be decided on a motion for summary judgment. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In a case where plaintiff alleges a § 1983 claim based upon false arrest, the question of immunity is distinct from, albeit related to, the question of probable cause. *See Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990); *Warren v. Dwyer,* 906 F.2d 70, 75 (2d Cir.1990). For example, it is possible that the Village police officers lacked probable cause for Plaintiff's arrest, but that it was objectively reasonable for the officers to believe they were not violating plaintiff's rights. *Creighton,* 483 U.S. at 641, 107 S.Ct. 3034; *Magnotti,* 918 F.2d at 367.

■ To penetrate the shield of qualified immunity, the arrest must be "so lacking in indicia of probable cause" as to render the officers' belief in its existence unreasonable. *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Qualified immunity for police officers is available on a motion for summary judgment if it appears, from undisputed facts, that an officer's conduct did not violate constitutional rights that were clearly established at the time of his or her actions, or that it was objectively reasonable for him or her to believe that his or her

actions did not violate such rights. *See Creighton,* 483 U.S. at 638–40, 107 S.Ct. 3034; *Malley,* 475 U.S. at 345, 106 S.Ct. 1092; *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As explained above, the Chatham police possessed probable cause to justify the arrest, and, even if probable cause were lacking, no reasonable trier of fact could disagree that it was objectively reasonable for them to make the arrest.

### 6. Liability of the Village of Chatham

██ To establish defendant Village of Chatham's liability for any alleged § 1983 violation, Plaintiff must prove that a policy or custom existed, endorsed by a Village policy-maker, that resulted in his unlawful arrest. *See Monell v. Dep't of Soc. Svcs. of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff's reliance on defendant Boehme's role as police chief in securing the arrest is misplaced since (1) probable cause did exist and (2) Plaintiff has failed to produce any evidence whatsoever of a policy, determined by Chief Boehme or any other Village official, that resulted in the arrest.

### 7. Remaining Claims

In light of the dismissal of the claims forming the basis for the section 1983 and 1988 actions, which provided federal subject matter jurisdiction over this action, the Court declines to exercise supplemental jurisdiction over the remaining state claims for intentional infliction of emotional distress and various violations of the New York State constitution. *See* 28 U.S.C. § 1367(c)(3). The Court so declines, and does not reach any consideration of those claims with respect to the Village Defendants.

### B. O'Rourke Defendants' Motion for Summary Judgment

██ Section 1983 imposes liability only upon state actors, or private individuals who act under color of state law. The O'Rourkes could only be liable as state actors if they had engaged in a conspiracy with the Village Defendants, and contributed to the abuse of the legal system in attempting to drive Plaintiff from the apartment. Plaintiff has adduced no such evidence, aside from offering a theory under which anyone who grew up in the same town as another individual would presumptively have joined a conspiracy against a third party. Given the existence of probable cause, as explained above, no conspiracy liability arises for the direct actions taken by the Chatham police, which form the basis for the claims asserted.

The issue of whether or not the O'Rourkes filed a false report is an issue of fact properly before a jury, but raises issues of state law rendering this Court's exercise of jurisdiction over the abuse of process, state constitutional, and intentional infliction of emotional distress claims improper.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that defendants Village of Chatham, Police Chief Kevin J. Boehme, and Officer Michael McDowell's motion for summary judgment is GRANTED as to Plaintiff's first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth causes of action, and, since the Court declines to exercise supplemental jurisdiction over the remaining state claims, the case against these defendants is DISMISSED;

ORDERED that defendants Juanita and Kevin O'Rourke's motion for summary judgment is GRANTED as to Plaintiff's first, second, third, fourth, fifth, seventh, eighth, ninth, tenth, and eleventh causes of action, and, since the Court declines to exercise supplemental jurisdiction over the remaining state claims, the case against these defendants is DISMISSED;

ORDERED that the case is DISMISSED in its ENTIRETY;

FURTHER ORDERED that the Clerk of the Court serve a copy of this Order on all parties by regular mail.

IT IS SO ORDERED.