Margaret CEA, Teresa Cea, and Megan Cea, by her mother and natural guardian Margaret Cea, Plaintiffs,

v.

ULSTER COUNTY, Ulster County Sheriff's Office, J. Richard Bockelmann, Mark Cunningham, Antonia Remsen, Frank P. Faluotico, Amy O'Brien, and Michael Earl Knox, Defendants.

Steven Guy Cea, Plaintiffs,

v.

Vincent G. Bradley, in his administrative capacity and personal capacity; Ulster County; Ulster County Sheriff's Office; J. Richard Bockelmann, in his administrative capacity and personal capacity; Frank P. Faluotico, in his personal capacity, a/k/a Mark P. Faluotico; Mark Cunningham, in his personal capacity; Antonia Remsen, in her personal capacity; Jean Brandt, in her personal capacity; John Doe 1, responsible for transporting the plaintiff from the City of Kingston Court to the Ulster County Jail on 3/29/99 in their personal capacity f/k/a Ulster County Correctional Officers; John Doe 2, responsible for transporting the plaintiff from the City of Kingston Court to the Ulster County Jail on 3/29/99 in their personal capacity f/k/a Ulster County Correctional Officers; John Doe 3, responsible for transporting the plaintiff from the City of Kingston Court to the Ulster County Jail on 3/29/99 in their personal capacity f/k/a Ulster County Correctional Officers; John Doe 4, responsible for transporting the plaintiff from the City of Kingston Court to the Ulster County Jail on 3/29/99 in their personal capacity f/k/a Ulster County Correctional Officers; and Michael Earl Knox, Defendants.

Nos. 1:00–CV–989(FJS/DRH), 1:02–CV–448(FJS/DRH).

United States District Court, N.D. New York.

March 12, 2004.

Galvin & Morgan (Jeremy Chen, Esq., of Counsel), Delmar, NY, for Plaintiffs Margaret Cea, Teresa Cea and Megan Cea.

Steven Guy Cea, Clintondale, NY, Pro se.

Maynard, O'Connor, Smith & Catalinotto, LLP (Michael E. Catalinotto, Jr., Esq., of Counsel), Albany, NY, for Defendants.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION [1]

In his amended complaint, Plaintiff Steven Cea asserts thirteen causes of action.

---

1. For purposes of this Memorandum–Decision and Order, "Plaintiff" refers to Plaintiff

Plaintiff's first cause of action alleges that Defendant Bradley denied him due process and infringed on his rights under the Second and Fourteenth Amendments to the United States Constitution.[2] His second and third causes of action allege that Defendant Faluotico swore to a false instrument in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and in violation of his right to equal protection under the New York State Constitution. He also alleges that Defendant Faluotico falsified the criminal information, failed to verify the information, caused an invasion of Plaintiff's home in violation of the Fourth and Fourteenth Amendments, and that his actions led to malicious prosecution and physical injury in violation of his Fourth, Eighth, and Fourteenth Amendment rights. *See* Snyder Aff. at Exhibit "A" at ¶¶ 147–153. Plaintiff's fourth cause of action alleges that Defendants Cunningham and Remsen unlawfully seized him and used excessive force. *See id.* at ¶¶ 154–168. Plaintiff also claims that Defendant Knox confined him and deprived him of liberty. *See id.* at ¶¶ 166–167. Plaintiff's fifth cause of action alleges that Defendants Cunningham and Remsen engaged in an unlawful search and seizure without a warrant and without probable cause by searching the bedrooms of his house in violation of the Fourth and Fourteenth Amendment. *See id.* at

¶¶ 169–173. Plaintiff's sixth cause of action alleges that Defendants Cunningham and Remsen denied him medical treatment. *See id.* at ¶¶ 174–186.[3] Plaintiff's seventh cause of action alleges, once again, that Defendants unlawfully detained him and denied him medical treatment. *See id.* at ¶¶ 187–191. Plaintiff's eighth cause of action alleges, once again, that Defendants Cunningham, Remsen and the Ulster County Sheriff's Office deprived him of liberty. *See id.* at ¶¶ 192–194. Plaintiff's ninth cause of action alleges that Defendant Bradley violated his right to equal protection and repeats his allegation that Defendants conducted an illegal search of his home. Plaintiff's tenth cause of action repeats the claim that Defendants' search of Plaintiff's home violated his rights under the Fourth and Fourteenth Amendments. *See id.* at ¶¶ 199–200. In his eleventh cause of action, Plaintiff alleges that the Ulster County Sheriff's Office and Defendant Bockelmann ratified the actions of the individual Defendants. *See id.* at ¶¶ 201–211. In his twelfth cause of action, Plaintiff asserts that he was deprived of his state and common law rights and that the County is vicariously liable for the torts of the individual Defendants. *See id.* at ¶¶ 212–214. Finally, in his thirteenth cause of action, Plaintiff alleges that Defendants were negligent and that the County failed to adequately hire, train and supervise its employees.

Steven Cea unless otherwise indicated.

**2.** By Order dated February 12, 2003, this Court dismissed Plaintiff's claims against Defendant Bradley on the ground of judicial immunity. *See* Affidavit of Michael T. Snyder, sworn to November 7, 2003 ("Snyder Aff."), at Exhibit "C."

**3.** Plaintiff also alleged that unnamed Ulster County Correctional Officers, "John Doe Defendants," and Defendant Brandt denied him medical treatment. However, at his deposition, Plaintiff testified that he had withdrawn

his claims against Defendant Brandt. *See* Defendants' Memorandum of Law at 22 (citing Ex. "H", at 230). Based upon this testimony, the Court hereby dismisses Plaintiff's claims against Defendant Brandt.

Moreover, Plaintiff has never identified nor served the John Doe Defendants. Therefore, the Court dismisses Plaintiff's claims against the John Doe Defendants. *See Pravda v. City of Albany,* 178 F.R.D. 25, 26 (N.D.N.Y.1998) (dismissing claims against unidentified individuals) (citations omitted).

Presently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court heard oral argument in support of, and in opposition to, this motion on February 25, 2004, at which time the Court issued an oral decision from the bench. The Court also advised the parties that a written decision would follow. The following constitutes the Court's written decision regarding the pending motion.

## II. BACKGROUND [4]

Plaintiff's claims arise from an incident that occurred on March 29, 1999. Based upon a criminal information that Defendant Faluotico prepared, an arrest warrant was issued against Plaintiff for the crime of Criminal Contempt in the Second Degree, as a result of Plaintiff's failure to turn in his pistol and pistol permit pursuant to a New York State Supreme Court order. *See* Snyder Aff. at ¶¶ 6–7 and Exhibit "F" (a copy of the arrest warrant and the Criminal Information) and Exhibit "G" (a copy of the Letter–Orders of the Supreme Court, Ulster County, issued by Justice Vincent G. Bradley, revoking Plaintiff's pistol permit because of pending criminal charges against him and ordering Plaintiff to surrender possession of his permit and his pistol).

According to Plaintiff's deposition testimony, on March 29, 1999, he heard someone pounding on his door, saw several figures outside his house telling him to open the door, and refused to open the door. *See id.* at ¶ 22 and Exhibit "H" at 66–70. Plaintiff called an attorney and his brother on the telephone and then heard glass breaking. *See id.* at ¶ 22 and Exhibit "H" at 77–86. One of the individuals kicked the door in and then Defendant Cunningham, with his weapon drawn, stepped into the house and pointed his gun at Plaintiff and his daughter, Teresa Cea. *See id.* at ¶ 22 and Exhibit "H" at 88–89. Defendant Cunningham then stepped closer to Plaintiff, stuck the gun in his face, and cocked the hammer of the gun, at which point Plaintiff asked him if he was going to shoot him. *See id.* at ¶ 22 and Exhibit "H" at 89–94. Plaintiff then looked at his wife and children and, when he turned back, Defendant Cunningham had reholstered his gun and then sprayed Plaintiff with pepper spray. *See id.* at ¶ 22 and Exhibit "H" at 94–100.

Plaintiff also testified that, after Defendant Cunningham sprayed him, Plaintiff asked him if he was Black Irish and Defendant Cunningham then grabbed him in a choke hold around his neck and dragged him while still sitting in his chair to the front door. *See id.* at ¶ 23 and Exhibit "H" at 108–116. In addition, Plaintiff testified that, after he was sprayed, he saw two officers go into the house and walk past the living room. *See id.* at ¶ 23 and Exhibit "H" at 112–13.

After Plaintiff was taken into the entranceway, he asked for medical assistance. *See id.* at ¶ 23 and Exhibit "H" at 118. Defendants called an ambulance and medical personnel arrived, treated Plaintiff for pepper spray, and then left after Plaintiff refused to sign papers refusing treatment or transfer because he could not see them. *See id.* at ¶ 23 and Exhibit "H" at 118–21. According to the ambulance report, the paramedics washed out Plaintiff's eyes and Plaintiff refused transport and refused to sign the release for refusal of treatment/transportation. *See id.* at ¶ 24 and Exhibit "I."

4. These facts are taken, for the most part, from Plaintiff's deposition testimony. For purposes of this motion, Defendants assert that, even if the Court accepts Plaintiff's version of the facts as true, they are still entitled to summary judgment.

Plaintiff was transferred from his home to the Esopus substation, booked and taken to Kingston City Court. *See id.* at ¶ 25 and Exhibit "H" at 128–30. Plaintiff had pain in his eyes, throat, chest and neck, had difficulty breathing, and was in pain all over. *See id.* at ¶ 25 and Exhibit "H" at 130–31. Plaintiff again asked for a doctor but was told that he should have signed the papers and that he was the one who refused medical treatment. *See id.* at ¶ 25 and Exhibit "H" at 131.

Plaintiff was charged with criminal contempt and resisting arrest and, after appearing in Kingston City Court, was transported to jail. *See id.* at ¶ 26 and Exhibit "H" at 133–34. Plaintiff again requested medical attention while en route to the jail. When he arrived at the jail, he was placed in the main reception area and was left waiting there until a nurse came and told him that they did not have the facilities to treat him. *See id.* at ¶ 26 and Exhibit "H" at 137–38. Plaintiff asked for medical assistance while at the jail but he was laughed at or ignored. *See id.* at ¶ 26 and Exhibit "H" at 143–44. Once Plaintiff left the jail, he was nearly unconscious. *See id.* at ¶ 26 and Exhibit "H" at 144. Plaintiff went to his attorney's office, and his attorney told him to go to the hospital. *See id.* at ¶ 26 and Exhibit "H" at 145–47. Plaintiff went to Castle Point VA Hospital with complaints of severe pain in the neck, left arm, shoulder, hands, and upper torso. *See id.* at Exhibit "H" at 148.

Subsequently, after a probable cause hearing, Justice Feeney dismissed the charge of criminal contempt in the second degree. With these facts in mind, the Court will address each of the issues raised in Defendants' motion in turn.

## III. DISCUSSION [5],[6]

### A. Summary judgment standard [7]

A court will grant a motion for summary judgment if there is no genuine issue of

---

5. As a preliminary matter, Plaintiff repeatedly seeks to assert the constitutional rights of his wife and daughters throughout his amended complaint. However, it is well-established that a plaintiff "may not assert a civil rights claim on behalf of another ...." *McCloud v. Delaney,* 677 F.Supp. 230, 232 (S.D.N.Y.1988) (footnotes omitted). Accordingly, the Court grants Defendants' motion for summary judgment with respect to any claims in Plaintiff Steven Cea's amended complaint relating to the constitutional rights of others.

6. The Court dismisses the claims against the Ulster County Sheriff's Office as redundant. *See Revene v. Charles County Comm'rs,* 882 F.2d 870, 874 (4th Cir.1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from ... the county government of which this 'office' is simply an agency." (citations omitted)).
Moreover, the claims against Sheriff Bockelmann, in his official capacity, are based upon allegations that he was responsible for the unlawful policies of the county. Such claims are effectively claims against Defendant Ulster County as " '[a]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.' " *Sheriff's Silver Star Ass'n of Oswego County, Inc. v. County of Oswego,* 56 F.Supp.2d 263, 265 n. 3 (N.D.N.Y.1999) (quotation omitted). Therefore, the Court dismisses the claims against Sheriff Bockelmann in his official capacity as redundant. *See id.* ("courts have dismissed official-capacity claims as unnecessary or redundant where similar claims are asserted against the entity" (citations omitted)).

7. In opposition to Defendants' motion for summary judgment, Plaintiff submitted an affidavit and Statement of Facts. Plaintiff's Statement of Facts, however, does not meet the requirements of Local Rule 7.1(a)(3) in two respects: (1) it does not mirror Defendants' Statement of Material Facts by admitting and/or denying each of Defendants' assertions in matching numbered paragraphs and (2), for the most part, it does not set forth a specific citation to the record where the factual issue arises. *See* L.R. 7.1(a)(3).

material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The moving party has the burden to demonstrate that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must come forward with specific facts demonstrating that a genuine issue exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The ultimate inquiry is whether a reasonable jury could find for the non-moving party based upon the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "All reasonable inferences and any ambiguities are drawn in favor of the nonmoving party." *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990) (citation omitted).

With this standard in mind, the Court will address Defendants' motion.

## B. Plaintiff's federal claims under 42 U.S.C. § 1983

### 1. *Plaintiff's claims against Defendants Bockelmann and Knox in their individual capacities*

■ Under § 1983, supervisors may be held liable for their own actions as well as, in some instances, the acts of their subordinates. *See Rose v. Zillioux*, No. 5:98–CV–1882, 2001 WL 1708796, *8 (N.D.N.Y. Dec. 27, 2001) (citation omitted). A supervisor may be held liable for violating a plaintiff's rights in several ways:

> "[He] may have directly participated in the infraction.... [He], after learning of the violation through a report or appeal, may have failed to remedy the wrong.... [He] may be liable because he [ ] created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue.... Lastly, [he] may be personally liable if he [ ] was grossly negligent in managing subordinates who caused the unlawful condition or event...."

*Id.* (quotation omitted).

■ With respect to Plaintiff's claims against Defendant Bockelmann, Plaintiff does not allege that Defendant Bockelmann was present during the incident or that he was, in any way, personally involved in the acts that allegedly violated Plaintiff's constitutional rights. Moreover, although Plaintiff alleges in a conclusory fashion that Defendant Bockelmann condoned or adopted the actions of his subordinates, he offers no evidence to support this claim. Accordingly, the Court grants Defendants' motion for summary judgment with respect to all of Plaintiff's claims against Defendant Bockelmann in his individual capacity.

With respect to Plaintiff's claims against Defendant Knox, Defendants assert that Defendant Knox did not participate in the arrest or imprisonment of Plaintiff and that, at his deposition, Plaintiff could not

---

Therefore, pursuant to Local Rule 7.1(a)(3), the Court may deem admitted the facts set forth in Defendants' Statement of Material Facts.

Since Plaintiff is a *pro se* litigant, the Court, in deciding this motion, has construed Plaintiff's Statement of Facts broadly but, for the most part, his Statement of Facts does no

more than ramble and repeat the allegations in his amended complaint. Moreover, his affidavit focuses almost exclusively on Defendant Bradley's and Defendant Faluotico's actions and how these actions set in motion the actions of others who, Plaintiff claims, violated his constitutional rights.

state a specific allegation of a constitutional deprivation against Defendant Knox.[8]

Plaintiff has not responded to Defendants' arguments regarding his claims against Defendant Knox. Moreover, based upon his testimony at his deposition, Plaintiff has failed to articulate a specific basis for his claims against Defendant Knox. Accordingly, the Court grants Defendants' motion for summary judgment with respect to all claims against Defendant Knox.

### 2. *Plaintiff's false arrest and/or false imprisonment claims* [9]

■ " 'A Section 1983 claim for false arrest [or false imprisonment] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause.' " *Sulkowska v. City of N.Y.*, 129 F.Supp.2d 274, 287 (S.D.N.Y.2001) (quotation omitted). To establish a false arrest claim under either federal or New York law, a plaintiff must demonstrate that " " '(i) the defendant intended to confine [the plaintiff], (ii) the plaintiff was conscious of the

confinement, (iii) the plaintiff did not consent to the confinement, and (iv) the confinement was not otherwise privileged.' " " *Id.* (quotation omitted). An arrest is "otherwise privileged, if there was probable cause to arrest." *Id.* (citations omitted). Thus, if there was probable cause for the arrest, there can be no claim for false arrest. *See Martinetti v. Town of New Hartford Police Dep't*, 112 F.Supp.2d 251, 252 (N.D.N.Y.2000) (citation omitted). The general rule is that "[a]n arrest pursuant to a valid warrant is presumptively made with probable cause." *Id.* at 252–53 (citation omitted). "The presumption of probable cause can be rebutted only by a showing of 'fraud, perjury, or the misrepresentation or falsification of evidence.' " *Id.* at 253 (quotation omitted).

■ In the present case, there can be no dispute that the Kingston City Court issued a warrant for Plaintiff's arrest, *see* Snyder Aff. at Exhibit "F," and that Defendants Remsen and Cunningham arrested him pursuant to that warrant.[10] Thus, a presumption arises that he was arrested with probable cause. *See id.* at 252–53. Plaintiff attempts to rebut this presump-

---

8. When Plaintiff was asked about Defendant Knox at his deposition, the following colloquy occurred:

> Q: What about Sergeant Knox? Why did you sue him?
> A: Sergeant Knox. I believe at the time that Sergeant Knox was supervising Officer Cunningham, Vacca and Remsen. Sergeant Knox came into my home, all right.
> Q: You're claiming Sergeant Knox was there?
> A: I believe Sergeant Knox was there, if he's the quote male black sergeant who transported my wife. Whoever that sergeant is should be named.
> Q: As you sit here today, do you have a specific allegation against Sergeant Knox?
> A: I'd have to review the complaint.

*See* Snyder Aff. at Exhibit "H" at 197–98.

9. To the extent that Plaintiff asserts a general claim of negligence against Defendants for

using unnecessary force and for negligently failing to adequately hire, train and supervise the individual Defendants, the Court dismisses this claim because "[w]here the negligence alleged is based upon an arrest, a plaintiff must resort to the traditional remedies of false imprisonment and malicious prosecution and cannot recover under the broader principles of negligence." *Pawlicki v. City of Ithaca*, 993 F.Supp. 140, 143 (N.D.N.Y.1998) (citations omitted).

10. Plaintiff attempts to call into question the validity of the arrest warrant on the ground that it is suspect of fraud because he was not provided with a copy of the warrant until July 1999 and was not shown the warrant when he requested to see it at the time of his arrest. *See* Plaintiff's Statement of Facts at ¶¶ 3–9. Despite this conclusory assertion, Plaintiff has come forward with no evidence to support this argument.

tion by arguing that Defendant Faluotico's application for the arrest warrant contained a false statement, lacked the necessary evidence to support the factual allegations of the information, and intended to defraud the court with the knowledge or belief that the false information would be filed, recorded or otherwise become a part of the public records. *See* Affidavit of Steven Cea, sworn to February 6, 2004 ("Cea Aff."), at ¶ 14; Snyder Aff. at Exhibit "A" at ¶¶ 147–153. Additionally, even assuming that there is some merit to Plaintiff's claim that Defendant Faluotico omitted material information from his criminal information, i.e., the basis for the contempt, generally, "[e]ven if information was ... negligently omitted from the criminal complaint and warrant application, as plaintiff argues, no action for false arrest would lie." *Dirienzo v. United States*, 690 F.Supp. 1149, 1154 (D.Conn.1988).[11]

Even assuming that Defendant Faluotico misrepresented or omitted material facts that led to the issuance of the arrest warrant, Defendants Cunningham and Remsen are entitled to qualified immunity because they acted in good faith, relying on a facially valid arrest warrant.

When an arresting officer acts in good faith, reasonably believing that his actions do not violate any clearly established rights, that officer will be protected by qualified immunity. *See Noel v. Houtman*, No. 94–CV–1647, 1997 WL 176316, *6 (N.D.N.Y. April 8, 1997) (quotation omitted). Thus, an "arresting officer need not inquire into the merits of a facially valid arrest warrant before execution [as], once probable cause for the arrest has been established by a judicial officer and an arrest warrant has been issued, the warrant compels arrest and a law enforcement officer ignores this command at his peril." *Dirienzo*, 690 F.Supp. at 1154 n. 4 (citations omitted).

In the present case, there is no evidence that the arresting officers, Defendants Cunningham and Remsen, assisted Defendant Faluotico in preparing the criminal information. Nor is there any indication that either Defendant Remsen or Defendant Cunningham should have been aware that the warrant they were executing was not supported by probable cause. Under these circumstances, it was objectively reasonable for them to believe that there was probable cause to arrest Plaintiff. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's claims of false arrest and/or false imprisonment against Defendants Cunningham and Remsen.[12]

---

11. This case presents a very unique fact pattern that merits special consideration as the charge of criminal contempt was dismissed on the ground that the information that Defendant Faluotico filed was *insufficient as a matter of law* to establish probable cause. *See* Snyder Aff. at Exhibit "J" at 3. Such a finding may indicate that Defendant Faluotico's omissions from the warrant application were reckless, or even intentional, thereby invalidating the warrant and generating tort liability for the subsequent arrest. *See Dirienzo*, 690 F.Supp. at 1154. However, the question of whether there was probable cause for the arrest is not necessary for the resolution of Plaintiff's false arrest claims because Defen-

dants Cunningham and Remsen are entitled to qualified immunity.

12. In his second cause of action, Plaintiff appears to allege that Defendant Faluotico falsely arrested him. However, beyond completing the criminal information, Defendant Faluotico had nothing to do with Plaintiff's arrest and was not present when Defendants Cunningham and Remsen arrested him. Therefore, Plaintiff cannot establish a *prima facie* case of false arrest against Defendant Faluotico. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's false arrest/false imprisonment claims to the extent that he asserts those claims against Defendant Faluotico.

### 3. Plaintiff's malicious prosecution claim

In his second cause of action, Plaintiff alleges that Defendant Faluotico's false allegations in the criminal information led to his malicious prosecution for criminal contempt in the second degree.

To prevail on a § 1983 claim for malicious prosecution, a plaintiff must show a violation of his Fourth Amendment rights and establish the elements of a malicious prosecution claim under New York law. *See Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir.2002) (citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor." *Id.* (citations omitted).

Defendants argue that Plaintiff cannot show an absence of probable cause for commencing the criminal contempt in the second degree prosecution. To support this assertion, they refer to Defendant Faluotico's deposition testimony that he based his application for a warrant on the letters from Judge Bradley directing Plaintiff to turn in his weapon and pistol permit and his confirmation of the fact that Plaintiff had not done so. *See* Snyder Aff. at Exhibit "F;" Exhibit "K" at 6–7. In addition, Plaintiff testified that he had received the letters from Justice Bradley revoking his pistol permit and requiring him to surrender his permit and his weapon and that he did not do so. *See id.* at Exhibit "H" at 39, 56.

Moreover, Defendants argue that Plaintiff cannot establish that Defendant Faluotico made any false statements in his application for the warrant knowingly, intentionally or with reckless disregard for the truth. Rather, Defendants assert that Defendant Faluotico relied upon various documents from the New York State Supreme Court and from the Sheriff's Office detailing the revocation of Plaintiff's pistol permit and the requirement that he surrender both his pistol and his permit. *See id.* at Exhibit "F;" Exhibit "K" at 6–7.

In response, Plaintiff asserts that Defendant Faluotico's undated application for an arrest warrant is suspect of fraud and was unsupported by facts that would support a charge of criminal contempt. *See* Plaintiff's Statement of Facts at ¶ 11. He also argues that no orders of Justice Bradley suspending or revoking Plaintiff's license to carry a pistol exist. *See id.* at ¶ 13. In addition, Plaintiff directs the Court's attention to the decision of Justice Feeney in which, after a probable cause hearing, he concluded that

[i]t is obvious to this Court that the revocation of both defendants' pistol permit is legal. However, it also finds that the information alleging Criminal Contempt in the Second Degree is fatally defective in its drafting, and, therefore, the basis of the charges against the defendants are not sufficient as a matter of law.

The Court finds that there is no evidence of an Order of Hon. Vincent Bradley dated December 7, 1997 revoking the defendants' pistol permits and there is no copy of that Order which, in fact, does not exist or any other Order of Judge Bradley suspending or revoking their license to carry a pistol.

\*       \*       \*       \*       \*       \*

Furthermore, various allegations are presented in a conclusory fashion without benefit of any proof whatsoever in support them. [sic] These include the allegation that the "defendants were made aware of a New York State Supreme Court order" "were served with said order" and "the defendants have

received said order." Each of these conclusions are hearsay statements as well.

*See* Snyder Aff. at Exhibit "J" at 3.

Although Defendants have still not produced an Order from Justice Bradley dated December 7, 1997, they have produced two letter-orders that Justice Bradley issued, dated September 22, 1997, and October 22, 1997. *See* Snyder Aff. at Exhibit "G." Justice Bradley's September 22, 1997 letter-order informs Plaintiff that his license to carry a pistol is suspended pending the disposition of the criminal charges against him and that he must surrender his pistol permit and all pistols to the Ulster County Sheriff's Department within five days of the date of the letter-order. The October 22, 1997 letter-order reiterates the substance of the earlier letter-order and informs Plaintiff that, because he has refused to surrender the weapons covered by his permit, his permit is revoked. *See id.* at Exhibit "G." In addition, Plaintiff testified that he received these letter-orders from Justice Bradley and, in fact, he responded to them. *See* Cea Aff. at Exhibit "C."

On the other hand, Justice Feeney determined that there was a lack of probable cause for the charge of criminal contempt in the second degree against Plaintiff, although it appears that Justice Feeney did not have Justice Bradley's letter-orders in front of him when he made this determination.

Based upon this conflicting evidence, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's malicious prosecution claim against Defendant Faluotico.

### 4. Plaintiff's excessive force claim

Plaintiff asserts that Defendant Cunningham used excessive force in effecting his arrest.[13]

■■■■ A claim alleging that a law enforcement officer used excessive force in the course of an arrest or other seizure of a citizen may be analyzed under the Fourth Amendment's "reasonableness" standard in view of the "totality of the circumstances." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir.2000) (citations omitted). This "requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Id.* (citations omitted). Due to the fact that " 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation,' " the reasonableness of the officer's belief should be judged from an on-scene perspective. *Calamia v. City of N.Y.*, 879 F.2d 1025, 1034–35 (2d Cir.1989) (quotation omitted). Essentially, a court must "adopt the 'perspective of a reasonable officer on the scene [of the arrest],' " " 'without regard to [his] underlying intent or motivation.' " *Roundtree v. City of N.Y.*, 778 F.Supp. 614, 621 (E.D.N.Y.1991) (quotations omitted).

■■■ In the present case, Plaintiff contends that, upon entering his residence, Defendant Cunningham had his weapon drawn and pointed it directly at him. Plaintiff also alleges that Defendant Cun-

---

**13.** Plaintiff includes references to Defendants Remsen and Knox in his excessive force claims; however, he has failed to provide any evidence to support these claims against either of these Defendants. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's excessive force claims against Defendants Remsen and Knox.

ningham "cocked the hammer of the firearm." Plaintiff then asserts that Defendant Cunningham removed his canister of pepper spray and sprayed him. Finally, Plaintiff claims that Defendant Cunningham grabbed him in a choke hold and dragged him by the neck for several feet.

Although Defendants claim that Defendant Cunningham's actions were reasonable in light of the circumstances, Plaintiff has clearly raised an issue of material fact with respect to the reasonableness of the force that Defendant Cunningham used. Accordingly, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's excessive force claim against Defendant Cunningham.

### 5. Plaintiff's unlawful search claim

Plaintiff claims in his fifth cause of action that Defendants Cunningham and Remsen unlawfully searched his home, without a warrant, in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

Although there is a presumption that a search by a police officer without a warrant is unreasonable, when arresting a person in his home, "officers may perform a protective sweep incident to the arrest to protect themselves or others." *United States v. Lauter,* 57 F.3d 212, 216 (2d Cir.1995). As part of a protective sweep pursuant to an arrest, officers may look in spaces " 'immediately adjoining the place of arrest from which an attack could be immediately launched.' " *Id.* (quotation omitted). However, "[b]eyond that limited cursory inspection, . . . an officer must have articulable facts that support an inference that the area to be swept harbors an individual posing danger to those present." *Id.* (citation omitted).

In the present case, Plaintiff alleges that, after he was pepper-sprayed, he saw a female officer and a white male officer walk through the house and into the bedrooms. *See* Snyder Aff. at Exhibit "H" at 110–13. Plaintiff also testified that he heard the female officer ask his daughters where the guns were kept. *See id.* at Exhibit "H" at 110. Moreover, Plaintiff asserts that the search was not a protective sweep because it was not conducted immediately after entry and, before searching, Defendants asked Plaintiff's daughters where his gun cabinet was and also asked them where his wallet and pistol licenses were. *See* Plaintiff's Statement of Facts at ¶¶ 85–86.

Defendants argue that, even accepting Plaintiff's allegations as true, any search of the residence was a justifiable protective sweep and, therefore, not a violation of the Fourth Amendment. However, they provide no factual basis for this bald assertion. Thus, despite Defendants' assertion to the contrary, accepting Plaintiff's version of the facts as true, Plaintiff, at the very least, has raised an issue of fact as to whether the search, without a warrant, falls within the protective-sweep exception and, thus, whether the search was lawful. Accordingly, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's unlawful search claim against Defendants Cunningham and Remsen.

### 6. Plaintiff's denial-of-medical-treatment claim

In his sixth and seventh causes of action, Plaintiff alleges that Defendants Cunningham and Remsen denied him medical treatment. *See* Snyder Aff. at Exhibit "A" at ¶¶ 174–191.

To state a constitutional claim based upon inadequate medical care, a "plaintiff must show that defendants acted with deliberate indifference to his serious medical needs." *Mills v. Fenger,* No. 98–

CV–0034E, 2003 WL 251953, *4 (W.D.N.Y. Jan. 3, 2003) (citations omitted); *La-Grange v. Ryan,* 142 F.Supp.2d 287, 293 (N.D.N.Y.2001) (citations omitted). The determination of whether the deliberate indifference standard is met involves consideration of an objective and a subjective prong. "First, the alleged deprivation must concern an objectively serious injury." *Mills,* 2003 WL 251953, at *4. To satisfy this prong, " 'the alleged deprivation must be of a "sufficiently serious" condition, one that "may produce death, degeneration, or extreme pain." ' " *Id.* (quoting *Boomer v. Lanigan,* 2002 WL 31413804, at *6 (S.D.N.Y.2002) (quoting *Morales v. Mackalm,* 278 F.3d 126, at 132 (2d Cir.2002))). In addition, "the defendants must have acted with culpable and deliberate indifference." *Id.* This prong may be established by showing that "the defendants acted with reckless disregard for the substantial risk posed by the plaintiff's serious medical condition [and] requires an analysis of 'what the [defendants] knew or should have known.' " *Id.* (quotation omitted).

▌ In the present case, Defendants contend that Plaintiff cannot demonstrate that his condition was sufficiently serious so as to potentially cause death, degeneration or extreme pain or that Defendants were aware of the risk or should have been aware of the risk and ignored it. Furthermore, Defendants argue that Plaintiff's claim of burning in his eyes and pain throughout his body cannot rise to the level of urgency required to state a claim for denial of medical treatment. Indeed, Defendants note that Plaintiff testified at his deposition that, after he left the jail, the first place he went was his attorney's office. *See* Snyder Aff. at Exhibit "H" at 145–47. Moreover, Defendants point out that when they summoned Emergency Medical Services to Plaintiff's home, the paramedics treated him, including decontaminating the pepper spray. *See id.* at Exhibit "I."

Plaintiff did not address his claim that Defendants denied him medical care in his affidavit and his references to this claim in his Statement of Facts are conclusory at best and do not address the objective prong of this claim, i.e., that his medical condition was of the type that might produce death, degeneration or extreme pain.

There is uncontroverted evidence that the Emergency Medical Services squad treated Plaintiff and that he refused to sign the "Refusal of Treatment/Transportation" form. *See* Snyder Aff. at Exhibit "I." Moreover, Plaintiff does not deny that, upon leaving the jail, he went to his attorney's office before he went to the hospital to receive treatment. Under these circumstances, Plaintiff has failed to demonstrate that he had a serious medical condition that required immediate treatment. Nor has he demonstrated that Defendants were deliberately indifferent to his medical needs. In fact, given the fact that Defendants called Emergency Medical Services, the evidence demonstrates that Defendants attempted to provide medical treatment for Plaintiff.

### 7. *Municipal liability*

Plaintiff claims in his eleventh cause of action that Ulster County had knowledge of and ratified the acts of the individual Defendants. *See* Snyder Aff. at Exhibit "A" at ¶¶ 201–211. In his thirteenth cause of action, he alleges that Ulster County negligently and carelessly failed to adequately hire, train and supervise the individual Defendants. *See id.* at Exhibit "A" at ¶¶ 215–218.

▌ To establish liability against a municipality under § 1983, a plaintiff must prove the existence of a policy or custom, endorsed by a final policymaker, that re-

sulted in the alleged constitutional deprivation. *See Snow v. Village of Chatham*, 84 F.Supp.2d 322, 329 (N.D.N.Y.2000) (citation omitted). It is well-established in this Circuit that " 'a single incident in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.' " *Knicrumah v. Albany City Sch. Dist.*, 241 F.Supp.2d 199, 207 (N.D.N.Y.2003) (quoting *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991)). Moreover, it is also well-settled that " '[t]he mere allegation that the municipality failed to train its employees properly is insufficient to establish a municipal custom or policy.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1512 (2d Cir.1995)). For liability to attach to a municipality in this context, "the failure to train, supervise, or discipline employees must rise to the level of 'deliberate indifference.' " *Id.* (quotation and citations omitted).

■ To establish the "deliberate indifference" prong of this test, a plaintiff must show that "(1) 'a policymaker knows "to a moral certainty" that [his or] her employees will confront a given situation,' " *id.*, that "(2) 'the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation,' " *id.*, and that "(3) 'the wrong choice by the [municipality] employee will frequently cause the deprivation of a citizen's constitutional rights.' " *Id.* (quotation omitted). "Deliberate indifference may also be inferred from a failure to supervise, such as when meaningful attempts to investigate

repeated claims of [constitutional violations] are absent." *Id.* at 209 (citation omitted). However, "[t]he existence of repeated complaints, . . . is not sufficient; rather, it is the combination of such complaints with the municipality's response which 'tip[s] the scales toward the probative.' " *Id.* (quotation omitted). Thus, for deliberate indifference to exist, "the response must amount to a persistent failure to investigate the complaints or discipline those whose conduct prompted the complaints." *Id.* (citations omitted).

■ Moreover, liability for failure to train does not attach merely because a municipality has unsatisfactorily trained an employee or because it has negligently administered an otherwise sufficient program. *See id.* at 208 (citations omitted). Rather, a plaintiff must demonstrate " 'how a particular policymaker's specific choice with respect to the training deficiency at issue reflects "deliberate indifference" to their constitutional rights, and how this indifference caused their injuries.' " *Id.* (quotation omitted).

■ In the present case, Plaintiff has not alleged that the individual Defendants were involved in previous incidents of which Defendant County was aware or how Defendant County was deliberately indifferent to their employees' training needs. Nor has Plaintiff come forward with any evidence of a policy or custom that resulted in his injuries. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's eleventh and thirteenth causes of action against Defendant County of Ulster.[14]

14. In passing, Plaintiff alleges that Defendant County of Ulster is liable for the state law torts of its employees. However, he did not address this issue in opposition to Defendants' motion for summary judgment, even though Defendants raised this issue—and sought

summary judgment with respect to this claim—in their motion papers. Therefore, the Court grants Defendants' motion for summary judgment with respect to this claim against Defendant County of Ulster. *See Stanford Square, L.L.C. v. Nomura Asset Capi-*

### 8. *Plaintiff's claims under the Eighth and Fourteenth Amendments*

Plaintiff asserts throughout his amended complaint that Defendants violated his rights under the Fourteenth Amendment to the United States Constitution. For example, in his second and third causes of action, he alleges that Defendant Faluotico violated his rights under the Fourteenth Amendment by swearing to a false instrument and causing home invasion, malicious prosecution and physical injury. *See* Snyder Aff. at Exhibit "A" at ¶¶ 147, 150–152. Plaintiff also alleges that Defendant Faluotico's actions led to violations of his Eighth Amendment rights. *See id.* at Exhibit "A" at ¶ 152.

■ "[T]he Fourth Amendment provides an explicit textual source of constitutional protection against the sort of physically intrusive government conduct [such as] assault and battery, false arrest, and false imprisonment claims, [therefore] that Amendment, and not the more generalized notion of 'substantive due process,' guides analysis of [a plaintiff's Fifth] and Fourteenth Amendment [claims]." *Snow*, 84 F.Supp.2d at 327 (citation omitted). Moreover, "[c]onstitutional claims arising out of a deprivation of liberty must be examined under Fourth Amendment standards, not due process standards under the Fifth and Fourteenth Amendments." *Id.* (citations omitted).

■ In addition, because Plaintiff's claims are based upon his arrest and pretrial detention, he does not properly allege a violation of the Eighth Amendment. *See Rodriguez v. Phillips*, 66 F.3d 470, 477 (2d Cir.1995) (citation omitted).

Plaintiff did not respond to this aspect of Defendants' motion. It is clear, however, that Plaintiff cannot pursue Fourteenth Amendment substantive due process claims or Eighth Amendment excessive force claims based upon the incidents that underlie this case. Accordingly, the Court grants Defendants' motion for summary judgment with respect to any claims that are based upon allegations of violations of his right to due process under the Fourteenth Amendment and violations of his right to be free from the use of excessive force under the Eighth Amendment.

### C. Plaintiff's claims for violation of his state constitutional rights

In several of his causes of action, Plaintiff alleges violations of his rights under the New York State Constitution. Plaintiff's sole support for these claims is the New York Court of Appeals' decision in *Brown v. State*, 89 N.Y.2d 172, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996). It appears that the crux of Plaintiff's argument is that, pursuant to *Brown,* if the individual Defendants are liable for violations of Plaintiff's rights, then, derivatively, Ulster County is also liable.

A fair reading of *Brown,* however, does not support the broad proposition on which Plaintiff relies. In *Brown*, the Court of Appeals affirmed the jurisdiction of the Court of Claims with respect to specific constitutional torts, noting that §§ 8 and 9 of the Court of Claims Act waived any Eleventh Amendment protection that may have applied. The court then sustained a cause of action against the State for violation of the New York State Constitution. *See id.* at 183–88, 652 N.Y.S.2d 223, 674 N.E.2d 1129. Whether such a claim could

*tal Corp.,* 228 F.Supp.2d 293, 300 (S.D.N.Y. 2002) (dismissing claim upon finding that the non-movant had abandoned his claim by neglect where it failed to discuss or make any

factual submission tending to support its claim in opposition to the movant's motion for summary judgment).

be brought against a local government in federal court was not specifically addressed in *Brown*.

Although the *Brown* decision may suggest that a state constitutional tort action may be brought against a county as well as the State,[15] it is not clear that the Court of Claims Act would apply in every respect, i.e., *respondeat superior* liability, to an action initiated in another forum.[16] *See Brown*, 89 N.Y.2d at 191, 652 N.Y.S.2d 223, 674 N.E.2d 1129.

Since neither party has adequately briefed this issue and, to date, the case law has not definitively addressed the issue, the Court declines to exercise its supplemental jurisdiction over Plaintiff's claims based upon violations of the New York State Constitution on the ground that these claims present a novel issue of state law which the courts of the State of New York should address in the first instance.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein as well as at oral argument, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to any of Plaintiff Steven Cea's claims that relate to the constitutional rights of those other than Plaintiff Steven Cea; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Steven Cea's claims against the Ulster County Sheriff's Department and against Defendant Bockelmann in his official capacity; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Steven Cea's claims against Defendant Bockelmann in his individual capacity; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to all of Plaintiff's Steven Cea's claims against Defendant Knox; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Steven Cea's claims for unlawful arrest and/or false imprisonment against Defendants Cunningham and Remsen; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Steven Cea's false arrest/false imprisonment claims against Defendant Faluotico; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiff Steven Cea's malicious prosecution claim against Defendant Faluotico; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Steven Cea's excessive force claims against Defendant Remsen; and the Court further

---

15. "By the amendment [to the Court of Claims Act] the State waived its immunity from liability for the torts of its officers and employees.... [S]uch waiver of immunity extended to subdivisions of the State, counties, and cities ...." *Daniels v. City of Syracuse*, 200 Misc. 415, 416, 106 N.Y.S.2d 72 (1951) (internal citations omitted).

16. Section 9 of the Court of Claims Act provides that "[t]he court shall have jurisdiction ... [t]o hear and determine a claim of any person, corporation or municipality against the state ... for the torts of its officers or employees ...." N.Y. Ct. Cl. Act § 9(2) (McKinney 1989).

ORDERS that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiff Steven Cea's excessive force claim against Defendant Cunningham; and the Court further

ORDERS that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiff Steven Cea's unlawful search claim against Defendants Cunningham and Remsen; and the Court further

ORDERS that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Steven Cea's denial-of-medical-treatment claims; and the Court further

ORDERS that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Steven Cea's § 1983 claims and his state law claims against Defendant County of Ulster; and the Court further

ORDERS that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Steven Cea's claims that are based upon violations of his due process rights under the Fourteenth Amendment and violations of his right to be from the use of excessive force under the Eighth Amendment; and the Court further

ORDERS that Plaintiff's claims for violation of rights under the New York State Constitution are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367.

**IT IS SO ORDERED.**[17]

17. To summarize, as a result of this decision and the Court's previous Memorandum–Decision and Order, dated February 4, 2003, the following claims remain for trial: (1) Plaintiff Steven Cea's claim of malicious prosecution for criminal contempt in the second degree against Defendant Faluotico; (2) Plaintiff Steven Cea's claim of excessive force against Defendant Cunningham; (3) Plaintiff Steven Cea's unlawful search claim against Defendants Cunningham and Remsen; (4) Plaintiff Margaret Cea's claim based upon an allegedly unlawful strip-search against Defendants O'Brien and Knox; (5) Plaintiff Margaret Cea's claim of malicious prosecution for criminal contempt in the second degree against Defendant Faluotico; (6) Plaintiffs Teresa and Megan Cea's claim of unlawful seizure against Defendants Cunningham and Remsen; (7) Plaintiffs Teresa and Megan Cea's claim of excessive force against Defendant Cunningham; (8) Plaintiffs Margaret, Teresa and Megan Cea's claim of an unlawful search of their residence against Defendant Remsen; and (9) Plaintiffs Margaret, Teresa and Megan Cea's state law claim for negligent hiring, supervision and training against Defendant Ulster County.

With respect to this last claim, at oral argument, Defendants requested that the Court dismiss this claim for lack of proof. The Court informed Defendants that, if they wanted the Court to take any action with respect to this claim prior to trial, they would have to file a formal motion seeking such relief.